Jane DOE, et al., Plaintiffs,

v.

Edward J. ALFRED, et al., Defendants.

Civ. A. No. 6:95–0761.

United States District Court,
S.D. West Virginia,
Parkersburg Division.

Dec. 4, 1995.

Michael J. Sharley, Westover, WV, for plaintiffs.

Robert J. Kent and Claudia W. Bentley Bowles, Rice, McDavid, Graff & Love, Martinsburg, WV, for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is Defendants' motion to dismiss. For the reasons discussed more fully below, the Court **GRANTS** in part and **DENIES** in part Defendants' motion.

### I. FACTUAL DEVELOPMENT

Plaintiff K.D. is a teenager who previously attended Jefferson Elementary Center during the 1994–95 school year.[1]  Plaintiff

---

**1.** Plaintiffs have requested to proceed under fictitious names "to protect the family and child from further embarrassment and publicity regarding the child's disability."  Consistent with well-established analogous federal and state law, the Court grants Plaintiffs' request.  *See, e.g.,*

Jane Doe is the student's mother. Defendant Edward J. Alfred is the principal of Jefferson Elementary Center; Defendant Ronald V. Stoops is the assistant principal; Defendant William D. Staats was the previous Superintendent of Wood County Schools; and Defendant Daniel D. Curry is the current Superintendent.

■ The student was diagnosed with learning disabilities while enrolled in the third and fourth grades and since has been educated pursuant to an Individual Education Program ("IEP") as required by the Individuals with Disabilities Education Act, 20 U.S.C. § 1401 et seq. (IDEA).[2] Because of K.D.'s attention deficit/hyperactivity disorder, his IEP incorporated a Behavior Intervention Plan ("BIP") outlining the procedures to be followed for controlling his aggression.

In March 1995, K.D. was suspended from school because of a physical altercation with a teacher. Plaintiffs allege the suspension violated the IEP and BIP. Plaintiffs also complain of Defendants' release of certain private information to the local news media and the Parkersburg Police Department concerning the incident. Plaintiffs assert they never consented to these disclosures, and the publicity violated K.D.'s right to privacy.

In May 1995, K.D. engaged in another altercation, this time with a fellow schoolmate during a field trip. When they returned to school, K.D. and his classmate were called to Assistant Principal Stoops' office. Mrs. Doe came to the school when summoned by Mr. Stoops, but she was denied immediate access to her son in violation of the BIP.[3] While in Stoops' office, another altercation occurred when the classmate provoked K.D. with an undisclosed racial epithet. K.D. then was suspended from school in violation of the BIP.

Later in May 1995, Mrs. Doe met with school and school board officials to discuss the BIP and why it was not followed. She alleges Stoops "belittled [her] ... and voiced his belief that ... K.D.'s behavior should be dealt with without respect for his disability and irregardless [sic] of the [BIP]." Compl. ¶ 20. Still later that month, Mrs. Doe met with an IEP Committee for a "transitional meeting." She claims a representative of the local Federation of Teachers also attended, which violated her son's right to privacy.

Plaintiffs filed suit in the Circuit Court of Wood County, West Virginia on August 2, 1995. Defendants removed the case to this Court on September 5, 1995. Plaintiffs assert Defendants, while acting under color of state law, deprived K.D. of his statutory and constitutional rights to a free appropriate public education ("FAPE")[4] and student privacy. Plaintiffs aver the right to a FAPE is guaranteed by (1) the IDEA and state statutes and regulations providing for the education of disabled students; (2) the Four-

---

*Honig v. Doe*, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988); *S–1 v. Spangler*, 832 F.2d 294 (4th Cir.1987); *Marilyn H. v. Roger Lee H.*, 193 W.Va. 201, 202 n. 1, 455 S.E.2d 570, 571 n. 1 (1993) (stating "[a]s is our practice in cases involving sensitive matters, we use initials to identify the parties rather than full names."); *In re Jonathan P.*, 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989) (same).

**2.** The IEP is designed to provide a road map for the child's educational programming during the course of the school year. *Carter v. Florence County Sch. Dist. Four*, 950 F.2d 156, 159 n. 1 (4th Cir.1991), aff'd, —— U.S. ——, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993); Thomas F. Guernsey & Kathe Klare, *Special Education Law* § 7.1 (1993). The development of a customized IEP for the student is the centerpiece requirement of the IDEA and "acts as a guide for the provision of services and insures that those services are related to identifiable educational goals and ob-

jectives" for disabled students. *Carter*, 950 F.2d at 159 n. 1; Guernsey & Klare, *supra* § 7.1.

**3.** The question of whether the BIP was incorporated into the IEP awaits resolution on the merits. The parties have not discussed whether a violation of the BIP alone is actionable, and the Court consequently reserves ruling on the issue.

**4.** A FAPE consists of:

'special education and related services that (A) have been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the State educational agency, (C) include an appropriate preschool, elementary, or secondary school education in the State involved, and (D) are provided in conformity with the individualized education program.....'

*Combs v. School Bd. of Rockingham County*, 15 F.3d 357, 358 (4th Cir.1994) (quoting 20 U.S.C. § 1401(a)(18)).

teenth Amendment to the United States Constitution; and (3) Article 3, Section 10 of the West Virginia Constitution. Plaintiffs seek damages and injunctive relief for the alleged constitutional and statutory violations pursuant to 42 U.S.C. § 1983. Defendants Alfred, Stoops, Staats and Curry (the "individual Defendants") also are sued for damages in their individual capacities. Plaintiffs seek only prospective injunctive relief against the Wood County Board of Education (the "Board").

Defendants' motion asserts the complaint must be dismissed because (1) Plaintiffs failed to exhaust their administrative remedies under the IDEA; (2) the IDEA does not provide for monetary damages; (3) Plaintiffs fail to state a claim under the Family Educational Rights and Privacy Act (FERPA), 20 U.S.C. § 1232 *et seq.* because (a) FERPA does not afford a private right of action; and (b) § 1983 cannot be used under these circumstances to allege a FERPA violation; and (4) the individual Defendants are entitled to qualified immunity on the individual capacity claims pursuant to West Virginia law.

## II. THE LAW

### A. Standard Governing a Motion to Dismiss:

A difficult and exacting burden is imposed upon a movant under Rule 12(b)(6). The well-settled standard by which such a motion is analyzed was recently restated by this Court as follows:

'In general, a motion to dismiss for failure to state a claim should not be granted *unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief.* In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff.' *Mylan Laboratories, Inc. v. Matkari,* 7 F.3d 1130, 1134 (4th Cir.1993),

cert. denied sub nom., American Home Products Corp. v. Mylan Laboratories, Inc., [——] U.S. [——], 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994).

*Hurt v. United States,* 889 F.Supp. 248, 251 (S.D.W.Va.1995) (Haden, C.J.) (emphasis added).

### B. Exhaustion of Administrative Remedies Under the IDEA

Defendants primarily assert Plaintiffs have failed to exhaust administrative remedies available to them under the IDEA. Defendants claim this failure to exhaust precludes Plaintiffs' § 1983 claim for failure to provide the student a FAPE. While not precisely briefed by the parties, the essential question is whether Plaintiffs were required to exhaust their administrative remedies under the IDEA although damages are not available to Plaintiffs in the administrative process. Some general background on the IDEA is helpful.

In *Honig v. Doe,* 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988), the Supreme Court echoed prior Congressional observations concerning the necessity of the IDEA and its predecessor Acts:[5]

Congress sought 'to assure that all handicapped children have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet their unique needs, [and] to assure that the rights of handicapped children and their parents or guardians are protected.' When the law was passed in 1975, Congress had before it ample evidence that such legislative assurances were sorely needed: 21 years after this Court declared education to be 'perhaps the most important function of state and local governments,' congressional studies revealed that better than half of the Nation's 8 million disabled children were not receiving appropriate educational services. Indeed, one out of every eight of these children was excluded from the pub-

---

5. Congress enacted the Education for the Handicapped Act (EHA) in 1970. *See generally* Caren Jenkins, Note, *Administrative Exhaustion or Private Rights of Action: Priorities in Educating Students with Disabilities,* 25 Golden Gate U.L.Rev. 177, 183 (1995). The EHA was amend-

ed by the Education for All Handicapped Children Act in 1975 (EAHCA). *Id.* In 1990, the EAHCA was redesignated the IDEA. *Id.* For the sake of consistency, the Court will refer to the present and prior versions of the statute as the IDEA.

lic school system altogether,; many others were simply 'warehoused' in special classes or were neglectfully shepherded through the system until they were old enough to drop out.

*Id.* at 309, 108 S.Ct. at 596 (citations and quoted authority omitted).

■ In response to the States' derelictions, Congress created the IDEA to "confer[ ] upon disabled students an enforceable substantive right to public education ... and condition[ed] federal financial assistance upon a State's compliance with the substantive and procedural goals of the Act." *Id.* at 310, 108 S.Ct. at 597 (citations omitted).

■ The IDEA did not accord parents the right to file suit in federal court to redress the denial of a FAPE or other rights protected by the IDEA *ab initio.* Rather, Congress created a detailed administrative scheme for aggrieved parents to pursue and exhaust prior to filing a federal claim. *See Dellmuth v. Muth,* 491 U.S. 223, 225, 109 S.Ct. 2397, 2398–99, 105 L.Ed.2d 181 (1989); *Honig,* 484 U.S. at 308, 108 S.Ct. at 596; *Smith v. Robinson,* 468 U.S. 992, 1010–11, 104 S.Ct. 3457, 3467–68, 82 L.Ed.2d 746 (1984); *Combs v. School Bd. of Rockingham County,* 15 F.3d 357, 358 (4th Cir.1994); *McGovern v. Sullins,* 676 F.2d 98, 99 (4th Cir. 1982); *Scruggs v. Campbell,* 630 F.2d 237, 238–39 (4th Cir.1980).[6] Title 20 U.S.C.A.

§ 1415(e)(2) provides, in pertinent part, as follows:

Any party aggrieved by the findings and decision made ... [during the administrative hearing and appeal process described in 20 U.S.C. § 1415(b)(2) and (c) ] shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy....

20 U.S.C. § 1415(e)(2).

The inclusion of this administrative process as a prerequisite to a civil action was purposeful, given "Congress' view that the needs of handicapped children are best accommodated by having the parents and the local education agency work together to formulate an individualized plan for each handicapped child's education." *Smith,* 468 U.S. 992, 1011–12, 104 S.Ct. 3457, 3468 (noting as well "Congress' intent that each child's individual education ... be worked out through a process that begins on the local level...."); *DeVries v. Spillane,* 853 F.2d 264, 266 (4th Cir.1988). As recognized in *Smith,* "[n]o federal district court presented with a constitutional claim to a public education can duplicate [this] process." *Smith,* 468 U.S. at 1012, 104 S.Ct. at 3468. Further, courts repeated-

---

**6.** The parties devote much attention to *Smith.* In *Smith,* the Supreme Court held, *inter alia,* the IDEA was the "exclusive avenue" through which an aggrieved student could assert an IDEA claim. *Smith* 468 U.S. at 1013, 104 S.Ct. at 3469. *Smith* thus barred plaintiffs from using § 1983 as a vehicle to assert an IDEA claim and thus circumvent the IDEA's comprehensive administrative scheme. *Id.*

Congress amended the IDEA in 1986, however, to explicitly overrule a sizeable portion of *Smith's* analysis. Section 1415(f) of the IDEA "was designed to 'reestablish statutory rights repealed by the U.S. Supreme Court in *Smith v. Robinson* ' and to 'reaffirm, in light of this decision the viability of section 504, 42 U.S.C.1983, and other statutes as separate vehicles for ensuring the rights of handicapped children.' " *Mrs. W. v. Tirozzi,* 832 F.2d 748, 754–55 (2d Cir.1987) (quoting H.R.Rep. No. 296, 99th Cong., 1st Sess. 4 (1985)); *see also* Guernsey & Klare, *supra* note 2, at § 13.3 (stating "Congress felt sufficiently strongly about the need to exhaust administrative

remedies that when, in an express rejection of ... *Smith v. Robinson,* it amended IDEA" to allow for § 1983 actions, it also continued to require the exhaustion of administrative remedies under the IDEA in most cases.).

Defendants also appear to suggest Congress has not abrogated Eleventh Amendment immunity for IDEA and related claims, citing *Dellmuth v. Muth,* 491 U.S. 223, 109 S.Ct. 2397, 105 L.Ed.2d 181 (1989). In 1990, however, Congress amended the IDEA and specifically provided "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from suit in Federal Court for a violation of this chapter." 20 U.S.C. § 1403(a); H.Rep. No. 544, 101st Cong., 2d Sess. 12 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1723, 1734 (stating "[t]he Committee has determined that the Supreme Court [in *Dellmuth* ] misinterpreted Congressional intent."); *see also* Guernsey & Klare, *supra* note 2, at § 14.2; Laura F. Rothstein, *Disabilities and the Law* § 6.52 (1992).

ly have observed exhaustion serves many useful functions by:

'(1) permitting the exercise of agency discretion and expertise on issues requiring these characteristics; (2) allowing the full development of technical issues and a factual record prior to court review; (3) preventing deliberate disregard and circumvention of agency procedures established by Congress; and (4) avoiding unnecessary judicial decision by giving the agency the first opportunity to correct any error.'

*Association for Commun. Living v. Romer*, 992 F.2d 1040, 1044 (10th Cir.1993) (quoting *Hayes v. Unified Sch. Dist.*, 877 F.2d 809, 814 (10th Cir.1989)); *see Schlude v. Northeast Cent. Sch. Dist.*, 892 F.Supp. 560 (S.D.N.Y.1995) (quoting *Heldman v. Sobol*, 962 F.2d 148, 159 (2d Cir.1992)).

▊▊▊ There are, of course, exceptions to the exhaustion requirement. Parents need not avail themselves of the administrative

process when (1) such process would be inadequate or futile; (2) the grievance challenges generally applicable policies that are contrary to law; or (3) exhaustion will work severe harm upon the litigant. *See, e.g., Learning Disabilities Ass'n v. Board of Educ.*, 837 F.Supp. 717, 722–23 (D.Md.1993). As noted in *Learning*, the determination of whether one of these "narrow" exceptions is applicable depends upon " 'whether the pursuit of administrative remedies under the facts of a given case will further the general purposes of exhaustion and the congressional intent behind the administrative scheme.' " *Learning*, 837 F.Supp. at 723 (quoting *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1302–03 (9th Cir.1992)). The burden of proving an exception to the exhaustion requirement rests on the party seeking to avoid the mandate.[7] *Id.*

While the exhaustion inquiry is relatively straightforward when presented in a case

**7.** Plaintiffs halfheartedly assert the futility or inadequacy exception. Plaintiffs state "Defendants have failed to demonstrate that they even have an administrative procedure to follow." Resp.Mem. at 6. Neither party discusses the administrative processes available to an aggrieved disabled student in West Virginia. The administrative scheme is set forth in *West Virginia Code* Chapter 18, Article 20 and its implementing regulations.

The current regulations were adopted by the State Board of Education in September 1995. Memorandum from Michael A. Valentine, Ph.D, Director, Office of Special Education, West Virginia Department of Education to Persons Addressed 1 (Oct. 20, 1995). The regulations are referred to as *Policy 2419* and became effective October 21, 1995. *See* West Virginia Department of Education, *Policy 2419: Regulations for the Education of Exceptional Students* (1995) ("*Policy 2419*").

With periodic updates, predecessor regulations to *Policy 2419* have been in effect in West Virginia for many years. For instance, one noted commentator discussed the procedural safeguards available to disabled students and their parents in West Virginia as early as 1980. Laura F. Rothstein, *Right to Education for the Handicapped in West Virginia*, 85 W.Va.L.R. 187, 191–93 (1983). The safeguards discussed in the Rothstein article do not differ substantially from those set forth in *Policy 2419*. *Compare id. with Policy 2419* § 7. Accordingly, Plaintiffs cannot complain about the absence of adequate administrative review.

Plaintiffs also appear to contend they are not subject to the exhaustion requirement because they do not specifically find fault with the IEP and BIP. Plaintiffs take too narrow a view of

both their complaint and the scope of the administrative process. In their response brief, Plaintiffs concede they "brought this case under section 1983 because the defendants, acting under color of state law, *deprived K.D. of his statutorily protected civil right to a FAPE* as given to the plaintiffs by federal and state laws for the education of students with disabilities and as protected by" the United States and West Virginia Constitutions. Resp.Mem. at 5. Section 7(I)(1) of *Policy 2419* states "[a] parent or a public agency may initiate a hearing relevant to ... *the provision of a [FAPE]* by submitting a written request for a due process hearing to the West Virginia Department of Education and/or the superintendent of the public agency." *Id.* § 7(I)(1) (emphasis added). Further, it is elementary that matters involving the discipline of disabled students are properly addressed within the confines of the administrative process. *See, e.g., Honig v. Doe*, 484 U.S. 305, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988); *Hayes v. Unified Sch. Dist.*, 877 F.2d 809, 813 (10th Cir.1989); *Carey v. Maine Sch. Dist.*, 754 F.Supp. 906, 921 (D.Me.1990) (stating "[t]he procedures outlined in section 1415 are intended to resolve *any* issues which arise with respect to the provision of free public education to children with disabilities.").

While Plaintiffs generally assert other justifications for their failure to pursue administrative remedies, they simply have failed to meet their burden of demonstrating entitlement to an exhaustion exception. Plaintiffs clearly had nonfutile and adequate administrative procedures available to them had they chose to avail themselves of such in accordance with *Policy 2419* § 7(I)(1).

containing only IDEA claims, the analysis is a bit more challenging when a disabled plaintiff seeks redress pursuant to § 1983 based on IDEA and constitutional violations. In response to the Supreme Court's decision in *Smith*, Congress enacted 20 U.S.C. § 1415(f). *See supra* note 6. Section 1415(f) leaves no doubt alternative theories of recovery may be pursued parallel to or exclusive of the relief provided by the IDEA:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973, or other Federal statutes protecting the rights of children and youth with disabilities, *except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter,* the procedures under subsections (b)(2) and (c) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

*Id.* (emphasis added).

The question of whether plaintiffs must first exhaust their administrative remedies under the IDEA before bringing a claim for damages under § 1983 has engendered disagreement in the reported decisions based upon the underscored portion of § 1415(f) above. While the Court of Appeals for the Fourth Circuit has not addressed the issue, a clear majority of courts hold exhaustion necessary despite the assertion of a contemporaneous § 1983 claim for damages. The decision in *Waterman v. Marquette–Alger Intermediate School Dist.,* 739 F.Supp. 361 (W.D.Mich.1990) is illustrative of the majority approach.

*Waterman* involved allegations of excessive discipline of disabled children at a Michigan school. Plaintiffs sought damages via several causes of action, including claims under the IDEA and § 1983. In concluding exhaustion was necessary prior to invoking § 1983, the court stated as follows:

> In the present case, plaintiffs' action[ ] under ... section 1983 seek[s] relief that is also available under the [IDEA]. This is because all of plaintiffs' claims arise from defendants' allegedly excessive disciplinary

acts and practices, and complaints about classroom discipline of special education students are cognizable under the [IDEA].

> . . . .

> [A]ccordingly, none of plaintiffs' claims may go forward in this court unless they have exhausted the [IDEA] administrative process. The fact that plaintiffs seek a particular type of relief, money damages, not available under [IDEA] ... is immaterial. *To hold otherwise would allow [IDEA] plaintiffs to frustrate Congressional purpose by bypassing the administrative process in virtually every case containing [IDEA] ... or section 1983 damages claims.*

*Id.* at 365; *see also Hayes v. Unified Sch. Dist.,* 877 F.2d 809, 812–13 (10th Cir.1989); *Torrie v. Cwayna,* 841 F.Supp. 1434, 1442–43 (S.D.Mich.1994); *Stauffer v. William Penn Sch. Dist.,* 829 F.Supp. 742, 748 (E.D.Pa. 1993); *Norris v. Board of Educ.,* 797 F.Supp. 1452, 1469 (S.D.Ind.1992); *Buffolino v. Board of Educ.,* 729 F.Supp. 240, 247 (E.D.N.Y.1990).

The minority approach is exemplified by *W.B. v. Matula,* 67 F.3d 484 (3rd Cir.1995). In *Matula,* a disabled student's mother sought damages for Defendants "persistent refusal ... to evaluate, classify and provide necessary educational services" to her son. *Id.* at 487. Plaintiffs filed suit, *inter alia,* pursuant to the IDEA and § 1983. After determining plaintiffs could recover damages on their IDEA based § 1983 claim, but not under the IDEA itself, the Court found exhaustion unnecessary via the following rationale:

> Beginning with the plain language of § 1415(f) ... it is apparent that the exhaustion requirement is limited to actions seeking relief 'also available' under IDEA. We held *supra* that damages are available in a § 1983 action, but IDEA itself makes no mention of such relief. Hence by its plain terms 1415(f) does not require exhaustion where the relief sought is unavailable in an administrative proceeding.

> . . . .

> [Further,] we have held that, where the relief sought in a civil action is not avail-

able in an IDEA administrative proceeding, recourse to such proceedings would be futile and the exhaustion requirement is excused.

*Id.* at 496.[8]

The legislative history surrounding the 1986 amendments sheds some light on the proper application of § 1415(f). The Senate Report which culminated in the passage of § 1415(f) states "Congress' original intent was that due process procedures, including the right to litigation *if that became necessary,* be available to all parents." S.Rep. No. 112, 99th Cong., 2d Sess. 2 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1798, 1799 (emphasis added). The Report further provides as follows:

> [§ 1415(f) ] provides that the [IDEA] does not limit the applicability of other laws which protect handicapped children and youth, *except that when a parent brings suit under another law when that suit could have been brought under the [IDEA], the parent will be required to exhaust [IDEA] administrative remedies to the same degree as would have been required had the suit been brought under the [IDEA].*

> . . . .

> Although [§ 1415(f) ] of the bill provides that the [IDEA] does not affect the applicability of other Federal laws related to special education, *it also makes clear that nothing is [sic] [the provision] should be interpreted to allow parents to circumvent the due process procedures and protections created under the [IDEA]. For example, under the [IDEA] parents must generally exhaust administrative remedies to attempt to resolve certain disagreements before filing a civil court action.* [Section 1415(f) ] makes it clear that when parents choose to file suit under another law that protects the rights of handicapped children ... *if that suit could have been filed under the [IDEA], then parents are required to exhaust [IDEA] administrative remedies*

*to the same extent as would have been necessary if the suit had been filed under the [IDEA].*

*Id.* at 3 and 15, 1986 U.S.C.C.A.N. at 1800 and 1805 (emphasis added).

The Conference Committee Report for § 1415(f) is equally insistent in demanding available administrative remedies be exhausted prior to filing suit under a statutory or constitutional provision other than the IDEA:

> With slightly different wording, both the Senate bill and the House amendment authorize the filing of civil actions under legal authorities other than [the IDEA] *so long as parents first exhaust administrative remedies available under [the IDEA] to the same extent as would be required under [the IDEA].*

H.Conf.Rep. No. 687, 99th Cong., 2d Sess. 7 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1798, 1809 (emphasis added).

Based on the available authority and the legislative history, the Court holds administrative exhaustion was required by § 1415(f) in the instant case. Plaintiffs' filings demonstrate beyond cavil the "relief" sought is the vindication of Plaintiff K.D.'s right to a FAPE. It is equally apparent the protection of a disabled child's right to a FAPE was the essential mission of the drafters of the IDEA. *See* 20 U.S.C.A. § 1400(c) (Supp.1995) (stating "[i]t is the purpose of this chapter to assure that all children with disabilities have available to them ... a free appropriate public education...."); *Florence County Sch. Dist. Four v. Carter,* —— U.S. ——, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993) (stating the IDEA "requires States to provide disabled children with a 'free appropriate public education....");  *Thomas v. Staats,* 633 F.Supp. 797, 798 (S.D.W.Va.1985) ("Providing a 'free appropriate public education' is the preeminent purpose of the [IDEA]") (citing *Hendrick Hudson Dist. Bd. of Educ. v. Rowley,* 458 U.S. 176, 180–81, 102 S.Ct. 3034, 3037–38, 73 L.Ed.2d 690 (1982)).

---

**8.** The Third Circuit may be retreating from *Matula*'s analysis, given the recent decision in *Susan N. v. Wilson Sch. Dist.,* 70 F.3d 751 (3rd Cir. 1995). *Wilson* involved both IDEA and § 1983 claims, and Plaintiffs sought compensatory and punitive damages. While there was no question

the plaintiffs in *Wilson* properly exhausted their administrative remedies under the IDEA, the Third Circuit nevertheless felt compelled to observe "section 1415(f) requires a party to exhaust the IDEA's administrative remedies *before pursuing other claims." Id.* at 763 (emphasis added).

The mere fact Plaintiffs seek a *remedy* of damages in addition to their requested general relief cannot be dispositive of the exhaustion requirement. Accordingly, since Plaintiffs' requested relief is also available to them under the IDEA, they are required to exhaust their administrative remedies under the IDEA according to § 1415(f).

There are a number of reasons why Plaintiffs should not be permitted to circumvent the IDEA's exhaustion requirement merely because they seek damages in the context of a § 1983 claim based on the IDEA. First, the most compelling allure of the majority position is a contrary ruling renders meaningless the IDEA's mandatory and carefully tailored provisions for administrative review. By merely appending a nominal claim for damages to a § 1983 claim, aggrieved parties could avoid the mandate of both Congress and the Supreme Court that the provision of a FAPE and related matters first should be dealt with on the local level between parents and school officials. It is at the local level disabled students' educational needs can be tailored and implemented with dispatch. As noted in *Smith*, "[n]o federal district court ... can duplicate [this] process." *Id.* 468 U.S. at 1012, 104 S.Ct. at 3468.

Second, the unique conciliatory posture of the administrative process may resolve the claim in the first instance, thus making the potential lawsuit and its accompanying claim for damages moot. It would be nonsensical and counter-productive indeed to allow a claim for damages to proceed in this Court when administrative proceedings below well might resolve the controversy to the satisfaction of all concerned. It is better to allow the dispute first to play out below.

Third, allowing § 1983 claims for damages to proceed directly to federal court without prior administrative review would deprive this Court of the valuable fact-finding function served by the administrative tribunals. As stated in *William Penn*, permitting aggrieved parties to initiate their dispute in this forum

> 'will render the entire scheme of [IDEA] nugatory. Federal courts, which are generalists with no expertise in the educational needs of handicapped students, are giv-

en the benefit of expert fact finding by a state agency devoted to this very purpose.' *William Penn*, 829 F.Supp. at 752 (quoting *Crocker v. Tennessee Secondary Sch. Athletic Ass'n*, 873 F.2d 933, 935 (6th Cir.1989)).

Based on the foregoing, the Court concludes Plaintiffs inexcusably failed to exhaust administrative remedies under the IDEA relating to their IDEA- and constitutionally-based § 1983 claims. Accordingly, Defendants' motion to dismiss these claims is **GRANTED** without prejudice.

### C. Remaining Grounds for Dismissal:

After carefully reviewing Defendants' remaining arguments in support of dismissal, the Court concludes such arguments are either not meritorious or need not be addressed given the above disposition. Accordingly, the Court **DENIES** the motion to dismiss as it relates to Plaintiffs' violation-of-privacy claims and discovery will proceed accordingly.

### III. CONCLUSION

Based on the foregoing, Defendants' motion to dismiss Plaintiffs' statutory and constitutional claim for denial of a FAPE is **GRANTED** without prejudice. The remainder of Defendants' motion to dismiss is **DENIED,** and Plaintiffs' claim for denial of his right to privacy will proceed according to the Court's Scheduling Order.