680 S.E.2d 46 (2009)
STATE of West Virginia ex rel. BOARD OF EDUCATION OF the COUNTY OF PUTNAM, Petitioner,
v.
The Honorable J.D. BEANE, C.E.M., a minor, the Honorable Leslie L. Maze, in her capacity as Special Prosecuting Attorney of Wood County, West Virginia Susan D. Simmons, in her capacity as guardian ad litem, and West Virginia Department of Health and Human Services, Respondents.
No. 34617.
Supreme Court of Appeals of West Virginia.
Submitted March 11, 2009.
Decided May 4, 2009.
Concurring and Dissenting Opinion of Justice Workman May 5, 2009.
*47 Gregory W. Bailey, Esq., Howard E. Seufer, Jr., Esq., Bowles Rice McDavid, Graff & Love, LLP, Morgantown, WV, for Petitioner.
Leslie L. Maze Toman, Special Prosecuting Attorney of Wood County, Elizabeth, WV, for W.Va. Department of Health and Human Resources.
Susan D. Simmons, Simmons & Simmons Elizabeth, WV, Guardian Ad Litem.
PER CURIAM:
The Petitioner, the Putnam County Board of Education ("the School Board"), asks that the Court enter a Writ of Prohibition against the Respondent, the Honorable J.D. Beane of the Circuit Court of Wood County, to halt the enforcement of two orders directing the School Board to provide and pay for a full-time nurse for a special-needs student. The School Board argues that the orders exceeded *48 the circuit court's legitimate powers because the School Board was not a party to the action before the circuit court, was not served with notice of the hearing that led to the circuit court's orders, and was not given an opportunity to be heard at a hearing.
After carefully reviewing the briefs, the legal authority cited and the record presented for consideration, we grant the requested writ of prohibition.

I.

Facts & Background
Respondent C.E.M.[1] is a thirteen-year-old sixth grade student who is currently enrolled at Winfield Middle School in Putnam County. C.E.M. has attended schools under the control of the School Board, for eleven years, beginning in the 1998-99 school year.
C.E.M. suffers from a number of medical problems and is wheelchair bound.[2] He was born prematurely on May 29, 1995, and remained in the hospital for the first eight months of his life. Shortly after his hospital discharge, an abuse and neglect petition was filed against both of his parents in the Circuit Court of Wood County, C.E.M.'s then-home county, on February 15, 1996. As a result, the Respondent West Virginia Department of Health and Human Resources ("DHHR") was given the legal and physical custody of C.E.M. DHHR placed C.E.M. in permanent foster care in Putnam County, and he has continuously resided in the same foster care home for thirteen years.
On June 11, 2008, the Circuit Judge conducted a review hearing in Wood County on the still-pending abuse and neglect petition. At that review hearing, evidence was presented by the guardian ad litem for C.E.M., by a special prosecutor, and by the DHHR, all of whom are Respondents in the instant matter. Following that hearing, on July 25, 2008, the circuit court entered an order requiring the School Board to provide and pay for a full-time nurse for C.E.M. while he was at school  despite the fact that the School Board was neither a party to the action nor afforded notice of the hearing and an opportunity to appear to present evidence.
It was alleged in the review hearing before the circuit court that C.E.M. had been provided with a full-time nurse by the School Board until the 2008-09 school year when he was promoted from Winfield Elementary to Winfield Middle School. Winfield Middle School does not have an on-site nurse. The nurse assigned to Winfield Middle School divides her time between two schools and is approximately ten minutes away from C.E.M.'s school when she is not on-site at his school. It was alleged that a ten-minute response time for the nurse poses a significant danger to C.E.M. because he experiences frequent seizures which require the administration of rectal Valium and oxygen. There was also proffered to the circuit court a letter from C.E.M.'s physician, who stated that treatment of his seizures should not be left to lay personnel, and stated that it would be optimal to have nursing personnel present to handle these situations.
The School Board was not a party to the abuse and neglect action before the circuit court, and never received notice of or an opportunity to appear at the hearing. Accordingly, in its petition to this Court, the School Board vigorously disputes the claim that C.E.M. needs or has always been provided with a full-time nurse. The School Board has attached an affidavit to its petition from its director of exceptional education, Patricia Homberg, to support this position. Ms. Homberg states that C.E.M., in accordance with his Individualized Education Plans ("IEP") prepared each year, has never needed or been provided with a full-time nurse. Furthermore, Ms. Homberg states that in four of C.E.M.'s eleven years in the school system, the school nurse available to attend to C.E.M. was assigned to multiple *49 schools.[3]
The circuit court did not have this input from Ms. Homberg at the review hearing because the School Board was not given notice of the hearing. Without having the benefit of the School Board's information, the circuit court's July 25, 2008 order made a general finding that, "Due to the medical needs of the minor child, the minor child requires the assistance of a full-time nurse when in school."[4] The order did not specifically require any action by the School Board.
Following entry of the July 25, 2008 order, the DHHR sent a copy of the order to the School Board. After receiving this order, counsel for the School Board informed the DHHR that it would take the Circuit Judge's order under advisement, but noted that the School Board was not a party to this action, and had not been provided notice or an opportunity to be heard. The School Board also noted to the DHHR that the order did not require it to take any action.
On November 10, 2008, the Circuit Judge entered another order, this time specifically requiring the School Board to take action. This second order stated that the circuit court
does hereby ORDER Putnam County Schools to provide a full-time nurse for the minor child, C.E.M., while the minor child is in the physical care of Putnam County Schools, as has historically been provided for said minor child. The Court does further ORDER that Putnam County Schools shall pay for the expense of said nurse.
Several days later, the School Board filed a petition with this Court seeking a writ of prohibition to halt enforcement of the circuit court's November 10, 2008 order.

II.

Standard of Review
"A writ of prohibition will not issue to prevent a simple abuse of discretion by a trial court. It will only issue where the trial court has no jurisdiction or having such jurisdiction exceeds its legitimate powers. W. Va.Code, 53-1-1." Syllabus Point 2, State ex rel. Peacher v. Sencindiver, 160 W.Va. 314, 233 S.E.2d 425 (1977). In accord, Syllabus Point 1, State ex rel. Shepard v. Holland, 219 W.Va. 310, 633 S.E.2d 255 (2006).

III.

Discussion
It is undisputed that the School Board had  at a minimum  a financial interest directly affected by the Circuit Judge's orders, and was charged with formulating and carrying out C.E.M.'s IEP. It is also undisputed that the School Board was not provided with either a notice of the hearing or an opportunity to be heard in the circuit court. The School Board therefore asserts that its fundamental right to due process has been violated by the Circuit Judge's orders and that the best interests of C.E.M. were not served.[5]
*50 The Respondents counter by arguing that the circuit court did not exceed its jurisdiction because the "primary goal in cases involving abuse and neglect, as in all family matters, must be the health and welfare of the children." Syllabus Point 3, in part, In re Katie S., 198 W.Va. 79, 479 S.E.2d 589 (1996).
While doing what is in the best interests of the child is the primary goal of abuse and neglect proceedings, this goal does not relieve a court from complying with fundamental due process requirements. The most fundamental due process protections are notice and an opportunity to be heard. As we held in Syllabus Point 2 of Simpson v. Stanton, 119 W.Va. 235, 193 S.E. 64 (1937): "The due process of law guaranteed by the State and Federal Constitutions, when applied to procedure in the courts of the land, requires both notice and the right to be heard."
A circuit court cannot adequately protect an abused child when the individuals who can supply pertinent facts are not given notice and the opportunity to present evidence. It was clearly a significant oversight of the lower court and the parties to make no effort to include the School Board in the relevant hearings, not only for the preservation of due process but also for determining an outcome that would be in C.E.M.'s best interests. The School Board's documents reflecting C.E.M.'s educational and school medical records as well as testimony of school employees as to relevant information on the progress and needs of C.E.M. would surely shed light on the question of the best interests of this young man.
The Respondents state in their reply brief that "There is absolutely no medical evidence to justify the determination of the Putnam County Board of Education that a full-time nurse is not required at this time." We again note that the School Board was not given an opportunity to present evidence in the circuit court. The School Board has presented the director's affidavit which contains evidence suggesting that C.E.M. has not had a seizure at school in two and a half years, that he has never been provided with a full-time nurse, and that for four of his eleven years in the school system, there was not a nurse present on-site.
*51 We note that some of the director's statements may be in opposition to C.E.M.'s treating physician's opinion that treatment of his seizures should not be left to lay personnel, and that it would be optimal to have nursing personnel present to handle these situations. It is not our function at this stage to weigh the evidence or make conclusions about the care C.E.M. requires while attending school. We note these conflicting viewpoints simply to point out that the Circuit Judge lacked relevant, necessary information when issuing the orders in this case by failing to provide the School Board with notice.
The circuit court clearly denied the School Board its fundamental due process rights to notice and an opportunity to be heard. In so doing, the circuit court did not have before it important evidence concerning the child's medical and educational history. We find it troubling that neither the special prosecuting attorney, the guardian ad litem, DHHR, nor the circuit court recognized the need to include the School Board in these hearings wherein the School Board's interests were considered and decided ex parte.
For these reasons, we hold that the circuit court deprived the School Board of fundamental due process and clearly exceeded its legitimate powers.

IV.

Conclusion
For the reasons set forth above, we grant the writ of prohibition. We decline to address the Petitioner's request for attorney fees. The circuit court's orders requiring the School Board to provide and pay for a full-time nurse for C.E.M. are hereby vacated.
Writ Granted.
Justice WORKMAN concurs, in part, and dissents, in part, and files a separate opinion.
WORKMAN, J. concurring, in part and dissenting, in part:

(Filed May 5, 2009)
While I concur with the majority opinion's conclusion that the Putnam County Board of Education ("Putnam County BOE") should have been made a party to the proceeding, I must dissent from the opinion because of its immense shortcomings in failing to clarify significant legal issues which should be resolved expeditiously.
The insurmountable problem with the majority opinion is the lack of responsiveness to a serious health and safety issue involving a severely disabled child. The thirteen-year-old child involved in this case is wheelchair bound and, according to his treating physician, was born extremely prematurely, at twenty-eight weeks, with Arnold Chiari Malformation and seizure disorder. The child is developmentally-delayed and has cortical blindness. He also has spastic diplegia. The child suffers from seizures, requiring not only administration of medication; but, also during the seizures, he may become cyanotic, requiring administration of oxygen. The evidence supplied by the letter from his physician suggests that his very life could depend on prompt medical attention if a seizure occurs.
Among significant issues left unaddressed, apparently because the majority found them inconsequential, is the issue of jurisdiction. Part and parcel of that issue is whether a child's Individualized Educational Plan ("IEP") can be modified or enforced in the context of an abuse and neglect proceeding.[1] The majority's silence on this issue leaves the implication that annual foster care review in an abuse and neglect proceeding is the proper forum for this issue to be heard. However, there is in fact a fairly extensive body of law in both federal and state statutes, as well as state regulations and even in case law from this Court, on this issue, which makes clear there is a separate procedure for the enforcement or modification of an IEP; yet, *52 the opinion fails to cite or discuss any of this law.
Under the Individuals with Disabilities Education Act ("IDEA"), the state is required to "ensure that all children with disabilities have available to them a free appropriate public education ("FAPE") that emphasizes special education and related services[.]" 20 U.S.C. § 1400(d)(1)(A). The West Virginia counterpart to the federal IDEA is found in West Virginia Code § 18-20-1 to -9 (2008), entitled "Education of Exceptional Children." Pursuant to West Virginia Code § 18-20-1, which authorizes the adoption of rules to develop a program to ensure that all exceptional children receive an education in accordance with state and federal law, the State Board developed Policy 2419. W. Va.C.S.R. § 16. Like the IDEA, Policy 2419 provides a comprehensive administrative scheme for addressing the complaint involving an IEP.
Chapter 11 of 126 West Virginia Code of State Regulation § 16 provides for the following means to resolve disputes relative to the IDEA and FAPE, which include the filing of a state complaint, including early resolution, mediation, and the filing of a due process complaint, including a resolution process. See Sturm v. Board of Educ. of Kanawha County, 223 W.Va. 277, ___, 672 S.E.2d 606, 610 (2008) (stating that [p]ursuant to W. Va.Code § 18-20-1 (1990), the State Board of Education is authorized to adopt rules to develop a program to assure that all exceptional children in the state receive an education in accordance with the mandates of state and federal laws. Pursuant to this authorization, the State Board developed Policy 2419 which is found at 126 C.S.R. § 16. Like the IDEA, Policy 2419 provides a comprehensive administrative scheme for addressing the complaints of parents and students. This scheme includes providing notice of procedural rights; the right to mediation; dispute resolution mechanisms consisting of the right to file a complaint with the appropriate state agency; the right to file a due process complaint with the district superintendent or the State Department of Education; and the right to have one's complaint heard and decided by an impartial hearing officer. Any party aggrieved by the decision of the hearing officer may then bring a civil action[ ]").
Additionally, in Ronnie Lee S. v. Mingo County Board of Education, 201 W.Va. 667, 500 S.E.2d 292 (1997), the Court held in syllabus point two as follows:
A civil action filed in a West Virginia circuit court, seeking monetary damages and injunctive relief from a county board of education and its personnel for the frequent and injurious use of a device employed to strap an autistic child to a chair while attending school, and which action includes allegations that the device was used upon the child in an intentional or reckless manner, is not precluded by the federal Individuals with Disabilities Education Act, 20 U.S.C. 1400 [1991], et seq., or the Act's West Virginia counterpart found in W. Va.Code, 18-20-1 [1990], et seq., and in West Virginia State Board of Education policy no. 2419, 126 C.S.R. 16, nor is the action subject to the exhaustion of administrative remedies requirement thereof, the Individuals with Disabilities Education Act and its West Virginia counterpart having been enacted to assure children with disabilities "a free appropriate public education" and the Act and its State counterpart having been enacted to generally expand the rights of such children, rather than to restrict them.
Ronnie Lee S., 201 W.Va. at 668, 500 S.E.2d at 293, Syl. Pt. 2 (emphasis added). Further, in Ronnie Lee S., the Court acknowledged, in relying on the decision reached by the United States District Court for the Southern District of West Virginia in Doe v. Alfred, 906 F.Supp. 1092 (S.D.W.Va.1995), that
There are, of course, exceptions to the exhaustion requirement. Parents need not avail themselves of the administrative process when (1) such process would be inadequate or futile; (2) the grievance challenges generally applicable policies that are contrary to law; or (3) exhaustion will work severe harm upon the litigant.... [T]he determination of whether one of these `narrow' exceptions is applicable depends upon `"whether the pursuit of administrative remedies under the facts of a *53 given case will further the general purposes of exhaustion and the congressional intent behind the administrative scheme."'
Ronnie Lee S., 201 W.Va. at 673, 500 S.E.2d at 298 (quoting Alfred, 906 F.Supp. at 1097) (citations omitted); see Sturm, 223 W.Va. at ___ and ___, 672 S.E.2d at 608 and 611 (holding that "[p]rior to bringing a civil suit alleging failure to provide a free appropriate public education under the Regulations for the Education of Students with Exceptionalities, Policy 2419, 126 C.S.R. § 16, a complainant must first exhaust his or her administrative remedies provided under the regulations or meet the burden of proving an exception to the exhaustion requirement[,]" and stating that exception to exhaustion requirement includes, but is not limited to, situation where exhaustion would be an exercise in futility).
Given the lack of any clarification on the issue, it is probable that the Respondent DHHS will re-litigate this issue in Wood County (this time with notice to Putnam County BOE), again in the context of an abuse and neglect proceeding, which clearly is not the proper means of seeking such relief.
Because the underlying issue involves the health and safety of a child with extreme disabilities and serious medical problems, I do not believe it was proper for the majority to completely ignore this issue. It should be remembered that this Court has said on several occasions that any time a child is before the court, that child is a ward of the court. In re Samantha M., 205 W.Va. 383, 392, 518 S.E.2d 387, 396 (1999) ("Our statutes are clear that whenever a child appears in court, that child is a ward of that court. That court has both a right and a responsibility to see to it that the child is protected. See Julie G., 201 W.Va. at 776, 500 S.E.2d at 889 (Workman, J., dissenting)[.]"). If this Court is to adhere to its responsibility, a number of issues should have been clarified. Perhaps if this was a case not directly impacting the life and health of a child, this "lick and a promise" treatment of this case might suffice.
As previously stated, the next logical step for the DHHS is to continue to pursue the same issue in Wood County in the abuse and neglect framework. If that happens, the case will in all likelihood wind up again in this Court. This could be death (literally) by due process for this child. The failure of the opinion to address the fact that existing law provides a method for the enforcement or modification of an IEP that is separate and distinct from an abuse and neglect proceeding leaves the parties (and our law) completely in the dark. It is important not only for this case, but for future cases to clarify the proper legal procedure.
By their failure to address these issues, the majority leaves the definite impression that the Wood County Circuit Court has subject matter jurisdiction in the context of an abuse and neglect proceeding to address the child's IEP. That is just not the case. Absent jurisdiction to hear the matter, the Circuit Court of Wood County exceeded its legitimate powers and the majority's grant of a writ of prohibition should have encompassed this determination.
I am also concerned that a Motion to Supplement the record was filed by the DHHS on April 1, 2009, upon which no action has ever been taken by this Court. A transcript of a hearing held before the lower court on March 31, 2009, was the item sought to be added to the record. If a party takes the time to file a motion, this Court should at least rule on it one way or another. If the Court wanted to turn a blind eye to additional proceedings improperly continuing in the lower court, they could at least have denied the motion. Although the substance of the hearing is of some concern, it is of even greater concern that the lower court is continuing to hold hearings on a case that this Court has taken in and has under consideration. West Virginia Rule of Appellate Procedure 14(c) provides that "[u]nless otherwise provided, the issuance of a rule to show cause in prohibition stays all further proceedings in the underlying action for which an award of a writ of prohibition is sought."[2]
*54 In conclusion, while the majority resolves one issue correctly, it fails to address other issues which must be resolved so that the issues critical to this child's health and safety can be addressed expeditiously. It is now May 4, 2009. The petition seeking resolution of these issues was filed on November 20, 2008. The fate of this boy should not have been left twisting in the wind, with all parties now guessing as to how to proceed, while his life may be in danger. This Court should have ordered that the matter be remanded to the proper court with proper notice to all parties and be resolved in an expeditious manner.
Based upon the foregoing, I concur, in part, and dissent, in part.
NOTES
[1] As is our practice in cases involving sensitive matters, we use the child's initials rather than his full name to identify him. See Marilyn H. v. Roger Lee H., 193 W.Va. 201, 202 n. 1, 455 S.E.2d 570, 571 n. 1 (1995).
[2] C.E.M.'s medical conditions are set forth by his physician in an April 22, 2008 letter attached to Respondents' "Response To Petition For Writ of Prohibition."
[3] Ms. Homberg's affidavit explains (with emphasis added):

During 7 years of his enrollment an RN was located at the school that he attended, and a school health nurse assigned to various schools provided supervision for the RN. For the other 4 years of his enrollment (including this year), a school health nurse for C.E.M.'s school was assigned to serve various schools ... C.E.M.'s Individualized Education Plan (IEP) has never required that a full-time nurse be assigned to him. Only one IEP developed for C.E.M. has even indicated that school health services, while in school, needed to be provided in any intensity other than indirectly between `10 minutes per week' and `as needed.'
[4] Another finding by the Circuit Judge states:

The minor child has frequent break-through seizures with status eplipticus requiring administration of rectal Valium. During said seizures, the minor child may become cyanotic, requiring the administration of oxygen.
This finding as to the frequency of C.E.M.'s seizures appears to be somewhat contradicted by statements made by the foster mother to the School Board. The affidavit from the School Board's director of exceptional education explains:
C.E.M.'s foster mother completed Putnam County Schools Health Services Seizure Questionnaire for 2008-2009 and indicated that C.E.M. rarely has a seizure. The IEP developed on April 30, 2008, documents that he has not had a seizure at school in 2 ½ years.
(Emphasis added).
[5] The School Board also states that even if the circuit court had the jurisdiction in this case to enter an order granting relief against the School Board, exhaustion of administrative remedies is generally required as a prerequisite to judicial intervention into matters arising from disputes over a special education student's Individualized Education Plan ("IEP").

There are both federal and state procedures in place to resolve disputes over a special education student's IEP. Under the Individuals with Disabilities Education Act ("IDEA"), the state is required to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services[.]" 20 U.S.C. 1400(d)(1)(A). The IDEA does not confer upon parents or custodians a right to immediately seek redress in federal court for the alleged denial of a free appropriate public education under the Act. Rather, the IDEA contains a detailed administrative scheme that must be exhausted prior to filing a federal claim. See 20 U.S.C. 1415(1).
The West Virginia counterpart to the IDEA is found in W.Va.Code, 18-20-1, et. seq., titled "Education of Exceptional Children." Pursuant to W.Va.Code, 18-20-1 [1990], the State Board of Education is authorized to adopt rules to develop a program to assure that all exceptional children in the state receive an education in accordance with the mandates of state and federal laws. Pursuant to this authorization, the State Board developed Policy 2419 which is found in the Code of State Regulations at 126 C.S.R. § 16.
Like the IDEA, Policy 2419 provides a comprehensive administrative scheme for addressing the complaints of parents, legal custodians and students. This scheme includes providing notice of procedural rights and the right to mediation. It also includes dispute resolution mechanisms consisting of the right to file a complaint with the appropriate state agency; the right to file a due process complaint with the district superintendent or the State Department of Education; and the right to have one's complaint heard and decided by an impartial hearing officer. Any party aggrieved by the decision of the hearing officer may then bring a civil action.
In our recent decision of Sturm v. Board of Educ. of Kanawha County, 223 W.Va. 277, 672 S.E.2d 606 (2008), we concluded that a party, prior to bringing a civil action under West Virginia Board of Education Policy 2419, 126 C.S.R. § 16, is required to exhaust their administrative remedies. We stated, in Syllabus Point 5 of Sturm:
Prior to bringing a civil suit alleging failure to provide a free appropriate public education under the Regulations for the Education of Students with Exceptionalities, Policy 2419, 126 C.S.R. § 16, a complainant must first exhaust his or her administrative remedies provided under the regulations or meet the burden of proving an exception to the exhaustion requirement.
[1] By way of background, this child has been in long-term permanent foster care in Putnam Count for thirteen years, but has remained in the legal custody of the DHHS as part of an abuse and neglect proceeding begun in Wood County. As the result of being in permanent foster care, the Wood County Circuit Court holds periodic reviews of his foster placement pursuant to West Virginia Code § 49-6-8 (2004 and Supp. 2008).
[2] While the circuit court retains jurisdiction over the child pursuant to West Virginia Code § 49-6-8, requiring foster care review by the state department, the hearing which is the issue of the Motion to Supplement clearly involved issues pending before this Court.