**LYKES BROS. STEAMSHIP CO., INC.**

v.

**GENERAL DYNAMICS CORPORATION
et al.**

Civ. A. No. 75–2222–Z.

United States District Court,
D. Massachusetts.

May 1, 1981.

Robert W. Mahoney, David S. Mortensen, Hale & Dorr, Boston, Mass., David C. G. Kerr, MacFarlane, Ferguson, Allison & Kelly, Tampa, Fla., J. Alton Boyer, Kominers, Fort, Schlefer & Boyer, Washington, D. C., for plaintiff.

Stanley H. Rudman, Michael R. Coppock, Guterman, Horvitz, Rubin & Rudman, Boston, Mass., for Western Gear Co.

Emmett B. Lewis, Admiralty & Shipping Section, U. S. Dept. of Justice, Washington, D. C., for U. S. A.

Jesse Climenko, New York City, for J. J. Henry Co., Inc.

John M. Harrington, Jr., John S. Hopkins, III, Ropes & Gray, Boston, Mass., Gilbert C. Miller, Ronald W. Stevens, Hill, Christopher & Phillips, Washington, D. C., for The Rucker Co.

Lewis H. Weinstein, Christian M. Hoffman, Foley, Hoag & Eliot, Boston, Mass., for General Dynamics Corp.

Weld S. Henshaw, Owen S. Walker, Choate, Hall & Stewart, Badger, Sullivan, Kelley & Cole, Boston, Mass., for Philadelphia Gear Corp.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

This case presents the novel question whether a party to an administrative proceeding can be collaterally estopped from asserting a claim in a subsequent court proceeding by reason of a prior adverse decision by a contracting officer when the claim was settled prior to full administrative review.

### I. FACTS AND PROCEDURAL HISTORY

The history of this litigation is protracted. Insofar as it is relevant to the present motion the essential facts are not in dispute. Plaintiff, Lykes Bros. Steamship Co. ("Lykes"), an owner and operator of cargo vessels, entered into a contract ("the prime contract"), with General Dynamics Corporation ("General") and the United States, pursuant to which General agreed to construct certain vessels for Lykes known as "Seabees" and the United States agreed to provide subsidies to finance this construction. The vessels were to be equipped with elevator systems designed to carry barges which were loaded onto and off of the ships. To carry out the terms of the contract, General contracted with The Rucker Company ("Rucker") to furnish the elevator systems. Defendant Philadelphia Gear Corporation ("Philadelphia Gear") was engaged by Rucker to supply the elevator gear assemblies.

The prime contract, a standard government shipbuilding contract, contains a generalized disputes resolution provision whereby each party may submit any dispute "arising under" the contract to the Director of the Office of Ship Construction of the Maritime Administration ("MarAd"). After submission of evidence in written

form to the Director, the contract provides, the Director shall render a written decision which may then be appealed within thirty days to the Maritime Subsidy Board. The contract entitles the parties to a *de novo* hearing before the Board. Article 41(d) of the contract specifies that the decision rendered by the Board is deemed to be final on any question of fact, unless the Secretary of Commerce undertakes a review, or it is "determined by a court of competent jurisdiction to have been fraudulent, capricious, arbitrary, or so grossly erroneous as necessarily to imply bad faith". If the Secretary of Commerce does review the Board's decision Article 41(d) provides that his decision must be accorded finality on all questions of fact. A final decision of the Board or the Secretary may be reviewed in a court of competent jurisdiction solely to determine if it is supported by "substantial evidence". These provisions of the contract essentially track the requirements of the Wunderlich Act.[1]

After delivery of the three vessels to Lykes in 1972 and 1973, Lykes discovered various defects in the construction of the ships including a problem with the elevator gears. In accordance with the provisions of the prime contract, Lykes submitted these claims to the Office of Ship Construction in March 1975. Concurrently, in order to assert its claims against the various subcontractors in timely fashion, Lykes instituted an action in this Court. While all of the subcontractors including defendant Philadelphia Gear were joined in the District Court action, Philadelphia Gear did not participate in the MarAd proceedings.

In October 1978, Ronald Kiss, Director of the Office of Ship Construction, issued his decision in which he found that the elevator winch gears were manufactured and installed in accordance with specifications provided by Lykes and that any existing deficiency in the gears "was caused by the specification written by the owner [Lykes]." *General Dynamics v. Lykes Bros. Steamship Co., Inc.*, Decision of Ronald Kiss (October 13, 1978). Lykes filed a timely appeal with the Maritime Subsidy Board. However, before the Board conducted a hearing Lykes, General, Rucker, and Western Gear (another subcontractor) entered into a settlement agreement with respect to all matters in dispute except for the gear controversy.

Philadelphia Gear did not participate in the settlement negotiations nor is it a party to the agreement. Under the agreement, General and Rucker assigned all their rights against Philadelphia Gear to Lykes. The agreement further provided that:

> [T]ermination of these dispute proceedings is without prejudice to the rights and claims of Lykes ... with respect to the ultimate liability of Philadelphia Gear.... Lykes and General Dynamics have further stipulated and agreed that the ... decision of the Director ... shall not be final and conclusive and binding and shall not be given any effect whatever in any forum or proceeding.

The Board subsequently dismissed the appeal "without prejudice" to any rights or claims that Lykes or any other parties "may have with respect to the ultimate liability of Philadelphia Gear Corporation for defects ... in the elevator winch gears, gearboxes, elevator brakes and other components." *Lykes Bros. Steamship Co., Inc. v. General Dynamics Corp.*, Docket Nos. CA–94 *et al.*, Order Terminating Proceedings, (October 26, 1979).

1. The Wunderlich Act, provides:

No provision of any contract entered into by the United States, relating to the finality or conclusiveness of any decision of the head of any department or agency or his duly authorized representative or board in a dispute involving a question arising under such contract, shall be pleaded in any suit now filed or to be filed as limiting judicial review of any such decision to cases where fraud by such official or his said representative or board is

alleged: *Provided, however*, That any such decision shall be final and conclusive unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence. 41 U.S.C. § 321.

41 U.S.C. § 322 provides: No Government contract shall contain a provision making final on a question of law the decision of any administrative official, representative, or board.

In the present action Lykes asserts its claim against Philadelphia Gear for the allegedly defective winch gears. Philadelphia Gear has moved for summary judgment on the ground that Lykes is collaterally estopped from asserting this claim by reason of the prior decision of Director Kiss.

## II. COLLATERAL ESTOPPEL

■ The doctrine of collateral estoppel is designed to prevent duplicative litigation of the same issue because such litigation is a burden upon litigants and wastes judicial resources. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979). In order to assert the doctrine successfully a party must demonstrate: 1) that the issue in the two actions is the same; 2) that it was actually and fully litigated; 3) that it was material and relevant to the previous action; 4) that a decision of the issue was necessary to the previous adjudication; and 5) that the previous judgment was final and valid. *Continental Can Co. v. Marshall*, 603 F.2d 590 (7th Cir. 1979). While an administrative determination may be given collateral estoppel effect, the administrative agency must be "acting in a judicial capacity and resolv[ing] disputed issues of fact properly before it which the parties have an adequate opportunity to litigate." *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966). Because the parties did not have an adequate opportunity to litigate the issue of the defective gears before Director Kiss, collateral estoppel effect cannot attach to the findings of the Director.

■ Despite defendant's contentions that the proceedings before the Director were "extensive", the record reveals that these proceedings were conducted solely on written submissions. The parties were not afforded an opportunity to present witnesses, to cross-examine, nor to conduct formal pretrial discovery. No rules of procedure nor rules of evidence governed the proceedings and no formal record was prepared. As the Supreme Court has recognized, "differences in available procedures may ... justify not allowing a prior judgment to have estoppel effect ... where defensive collateral estoppel is asserted against a plaintiff who has litigated and lost." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331, n. 15, 99 S.Ct. 645, 651, n. 15, 58 L.Ed.2d 552 (1979).

In addition, while the contracting officer possesses technical knowledge relevant to the issues of ship construction, his dual role as both a "judicial" officer passing upon the facts and as contracting officer familiar with the history of the particular contract in dispute, theoretically renders his impartiality subject to question. Fundamental to any notion of procedural due process is the presence of an unbiased tribunal. *See;*. Friendly, "Some Kind of Hearing," 123 *U.Pa.L.Rev.* 1267, 1279–95 (1975).

In marked contrast, the hearing before the Board provides all the requisites of procedural due process: a disinterested presiding officer; formal discovery; subpoena of witnesses; an opportunity to present and cross-examine witnesses; and the creation of a formal record. *See*, 46 C.F.R. § 201.

■ It is for this reason that the courts have recognized the implicit distinction between the findings of the contracting officer and that of the Board. The factual findings of the Board are subjected only to a substantial evidence test in the Court of Claims and those issues cannot be tried *de novo* in that Court. *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 420, 86 S.Ct. 1545, 1559, 16 L.Ed.2d 642 (1966). However, the decision of the contracting officer "enjoys no presumptive validity whatever" in the Board's consideration of an appeal from that decision, and the appealing party is entitled to a *de novo* hearing before the Board. *Southwest Welding & Manufacturing Co. v. United States*, 413 F.2d 1167 (U.S.Ct.Cl.1969). In *Dean Construction Co. v. United States*, 411 F.2d 1238 (1969) the Court of Claims recognized this distinction in refusing to accord finality to a contracting officer's decision when an appeal to the Board had been dismissed for lack of jurisdiction. The Court stated:

[T]he first binding adjudication on a factual issue arising under the "Disputes" clause of a government contract must come from a properly constituted board . . . after a hearing before the board on appeal from the contracting officer's preliminary decision. . . . A contracting officer usually makes his decisions without a hearing of any kind. He is not under the restraint of having to justify his determinations on the basis of substantial evidence. 411 F.2d at 1245.

It reiterated that holding in *L. Rosenman Corporation v. United States*, 390 F.2d 711, 712, n.2 (Ct.Cl.1968), stating, "The Wunderlich Act was intended to apply only to proceedings in which the basic guarantees of procedural due process are adequately protected. . . . The *ex parte* decision-making process of a contracting officer does not provide these guarantees."

Defendant asserts however that because Lykes was provided with the *opportunity* to participate in a hearing before the Board this is sufficient to insure adequate procedural safeguards regardless of whether such a hearing did in fact take place. To accept this argument would be to penalize Lykes for not pursuing an appeal which had become non-adversarial in nature. Insofar as the settlement agreement absolved General and the named subcontractors of any responsibility for defects, their interests in the litigation ended. At that point Lykes had no adversary in the MarAd proceedings. Even assuming that MarAd retained jurisdiction after settlement was reached,[2] the issues as between the parties before MarAd had become moot and for Lykes to have pursued its appeal would have been frivolous at best.[3]

Finally, this Court's decision today in no way hinders the goals of the Wunderlich Act nor the intention of the parties. The fact that collateral estoppel will not attach to the findings of the contracting officer will in no way discourage the parties from presenting all of their evidence at the administrative level because the decision of the Board remains a final judgment upon which this Court has only limited powers of review. And while collateral estoppel is based in part on considerations of judicial economy, so too the settlement of protracted litigation saves judicial resources. Were this Court to imbue the findings of the contracting officer with finality in this case, the chances for settlement would be impeded whenever all of the interested parties were not present before MarAd. Such a result would be in direct contravention of the intent of the Wunderlich Act to create a preliminary administrative process which also provides a forum for informal negotiations between the parties prior to a full scale board hearing.

For all of these reasons, defendant's motion for summary judgment is denied.

---

**2.** Lykes asserts that the Board was deprived of jurisdiction when the holdback of funds held by MarAd was released pursuant to the settlement agreement. Lykes interprets Article 41(e) of the disputes provision to require that the Board maintain a monetary interest in the dispute in order to properly assert jurisdiction. Because my decision rests upon the lack of adequate procedural safeguards before the contracting officer, I need not pass upon the merits of this position.

**3.** Insofar as Philadelphia Gear's claim is one of failure to exhaust administrative remedies, it cannot be heard to complain about a failure to exhaust in an action to which it was not a party. Additionally, while a contracting party in a government contract is normally required by the disputes provision of that contract to exhaust his administrative remedies before he can be heard in a court of competent jurisdiction, *United States v. Holpuch*, 328 U.S. 234, 66 S.Ct. 1000, 90 L.Ed. 1192 (1946), exhaustion is not required if it would prove unavailing or futile. *Continental Can Co. v. Marshall*, 603 F.2d 590, 597 (7th Cir. 1979). Settlement of all disputed issues between the parties qualifies as an event which renders exhaustion unnecessary.