500 S.E.2d 292

**RONNIE LEE S., et al., Plaintiffs Below, Appellants,**

v.

**MINGO COUNTY BOARD OF EDUCATION, et al., Defendants Below, Appellees.**

No. 23965.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 15, 1997.

Decided Dec. 15, 1997.

Mary Downey, Charleston, for Appellants.

Claudia W. Bentley, Kimberly S. Croyle, Bowles, Rice, McDavid, Graff & Love, Martinsburg, for Appellees.

Mark McWilliams, Charleston, for Amicus Curiae West Virginia Advocates, Inc.

McHUGH, Justice:

This action is before this Court upon an appeal from the final order of the Circuit Court of Kanawha County, West Virginia, entered on June 25, 1996. The appellants are Ronnie Lee S. (an autistic child born in

March 1987) and his parents.[1] The appellees are the Mingo County Board of Education and various teachers and employees thereof. This action concerns a claim by the appellants for damages and injunctive relief arising out of the appellees' alleged frequent and injurious use of a device known as the "love bug" employed to strap Ronnie Lee S. to a chair while he attended the appellees' school system. As reflected in the final order, the circuit court granted summary judgment for the appellees because the court determined that the action was (1) precluded by the federal Individuals with Disabilities Education Act, 20 U.S.C. 1400 [1991], *et seq.*, and (2) precluded by a written settlement agreement executed by the appellants and the appellees concerning various matters the appellants had contested under the Act with regard to Ronnie's program of education.

This Court has before it the petition for appeal, all matters of record and the briefs of counsel, including a brief amicus curiae filed by West Virginia Advocates, Inc., in support of the petition. For the reasons stated below, this Court concludes that the appellants' action was neither precluded by the Individuals with Disabilities Education Act nor by the written settlement agreement. Moreover, this Court is of the opinion that the record reveals the existence of genuine issues of material fact concerning the action. Accordingly, we reverse the final order of the circuit court granting summary judgment, and we remand this action for further proceedings.

## I.

### The Facts

Ronnie Lee S. is an autistic child, and, as the parties have not disputed, is entitled to special education and related services while attending this State's public school system. At the age of three, Ronnie began attending Williamson Elementary School, in Mingo County, for the 1990–91 school year and continued to attend Williamson Elementary during the 1991–92 year. Thereafter, during the 1992–93 school year, he attended Lenore Elementary School, also in Mingo County. According to the appellants, at both Williamson Elementary and Lenore Elementary, Ronnie was frequently strapped to a chair by means of a vest-like device known as a "love bug." The appellants asserted that the "love bug" was used by the teaching staff of the Mingo County Board of Education over the appellants' objections and resulted in bruising and in psychological trauma to Ronnie Lee S.[2]

In November 1993, the appellants filed a request with the West Virginia State Board of Education, pursuant to the Individuals with Disabilities Education Act, seeking a "due process hearing" for the alleged failure of the appellees to provide Ronnie Lee S. with "a free appropriate public education."[3] In May 1994, however, the due process pro-

---

1. As is our practice in cases involving sensitive matters, we use an initial to identify the child, rather than a full name. *See Marilyn H. v. Roger Lee H.*, 193 W.Va. 201, 202 n. 1, 455 S.E.2d 570, 571 n. 1 (1995).

2. The limited record before this Court indicates that the appellees have not had an opportunity to fully set forth the reasons for the use of the "love bug," generally, or with specific regard to Ronnie Lee S. In particular, the record does not clarify whether the device was used for discipline or for some other purpose.

   The record does include, however, the deposition of appellant Kathy Lynn S., the mother of Ronnie Lee S. As Kathy Lynn S. testified, she visited Lenore Elementary School on February 16, 1993, and concluded that her son had "passed out" that day following his "hysterical" resistance to the "love bug." Moreover, Kathy Lynn S. indicated that Ronnie Lee S. had sustained bruises at various times as a result of "trying to escape from the device." In addition,

Timothy James Freeman, a clinical psychologist, testified during his deposition that "if, indeed, Ronnie Lee was strapped into a chair, that is abusive to an autistic child." Furthermore, Dr. Freeman stated: "[Y]ou're taught you don't try to restrain these [autistic] children because they're tactilly sensitive and it can frighten them, it can make them hysterical, and it can cause them to tantrum."

   The evidence of the appellants in this regard, and the appellees' response thereto, will, of course, need to be further developed upon the remand of this action to the circuit court.

3. As expressed in 20 U.S.C. 1400(c) [1991], the purpose of the Individuals with Disabilities Education Act is to assure children with disabilities "a free appropriate public education which emphasizes special education and related services designed to meet their unique needs." Pursuant to 20 U.S.C. 1415(b)(2) [1988], the parents or guardian of such a child have the right to request "an impartial due process hearing" concerning

ceeding was dismissed as the result of a written settlement agreement executed by the appellants and the appellees on April 29, 1994. As reflected in the settlement agreement, the due process hearing had focused upon (1) the admission of Ronnie Lee S. at Kermit Elementary School, in Mingo County, in 1994, (2) the acknowledgment by school officials of Ronnie Lee S.'s autistic behaviors and characteristics and (3) the development of goals and objectives with regard to an individualized program of education for Ronnie. Releasing the appellants' claims concerning those matters, the written settlement agreement stated:

> Upon execution of this agreement [the S. family] and their counsel hereby release, acquit, forever discharge and covenant not to sue the Mingo County Board of Education, its agents, employees, members or officers ... in regard to any and all actions, claims, complaints, demands, charges, damages ... and any other legal or equitable relief of any kind which they now have or hereafter may have directly or indirectly on account of, or arising out of any matter or thing which has happened, developed, or occurred in connection with the following issues that were part of or raised in due process case number 94–023: *location of program for Ronnie Lee [S.], the placement or classification of Ronnie Lee [S.], and/or the implementation or development of goals and objectives for Ronnie Lee [S.]*

(emphasis added).

Significantly, the written settlement agreement made no mention of the strapping of Ronnie Lee S. to a chair by means of the "love bug" or otherwise during his attendance at Williamson Elementary School and at Lenore Elementary School. Nor did the settlement agreement address any of the appellants' claims in relation thereto.

In February 1995, the appellants instituted this action in the circuit court against the appellees. Seeking damages and injunctive relief concerning the use of the "love bug," the appellants' complaint alleged that, as a result of the device, Ronnie Lee S. sustained "great psychological and emotional stress, developmental delays, trauma, fears and pain and suffering." In particular, the complaint indicated that, because of the use of the "love bug" with regard to Ronnie Lee S., the appellees (1) violated Ronnie Lee S.'s rights to due process, to an education and to be free of excessive punishment; (2) committed assault and battery; (3) intentionally or recklessly inflicted severe emotional distress; and (4) discriminated against Ronnie Lee S. because of his disability. The complaint did not make reference to the Individuals with Disabilities Education Act.[4]

Thereafter, the appellees filed a motion for summary judgment pursuant to Rule 56 of the *West Virginia Rules of Civil Procedure.* Following a hearing, the circuit court granted the motion. As reflected in the final order of June 25, 1996, the circuit court granted summary judgment because it determined that the appellants' action was precluded by the Individuals with Disabilities

---

matters encompassed by the Act, which may be conducted by "the State educational agency."

4. It should be noted that the complaint also alleged that the appellees (1) denied Ronnie Lee S. special education programs and services in violation of his right to equal protection of the laws and in violation of various statutes and policies of this State; (2) failed to properly hire, train and supervise teachers and employees with regard to Ronnie Lee S.; (3) engaged in the false imprisonment of Ronnie Lee S. by means of the "love bug" and fraudulently misrepresented the use thereof to the appellants; and (4) threatened retaliation against the appellants for asserting their rights.

Those particular allegations, however, are not before this Court and were not before the circuit court at the time of the entry of the final order of June 25, 1996. Specifically, those allegations were described in a "pretrial information sheet" filed by the appellants in the circuit court as being "dropped" from the action. Consequently, although some of those allegations, such as the allegation that Ronnie Lee S. was denied special education programs and services, may have implicated the Individuals with Disabilities Education Act, the appeal currently before us is limited to the remaining portions of the complaint, which were reviewed by the circuit court.

In fact, had the above allegations remained as a part of the appellants' action and had not been "dropped," the action may well have been precluded by the Individuals with Disabilities Education Act.

Education Act, i.e., the appellants should have exhausted their administrative remedies under the Act and litigated the use of the "love bug" in that regard, rather than by filing an action in circuit court. Moreover, the circuit court determined that the action was precluded by the written settlement agreement.

## II.

### The Federal Statute

As stated above, the parties have not disputed that Ronnie Lee S. is entitled to special education and related services while attending this State's public school system. In particular, as a child with the disability of autism, Ronnie is entitled to the benefits of the federal Individuals with Disabilities Education Act. 20 U.S.C. 1400 [1991], *et seq.*

As the United States District Court for the Southern District of West Virginia observed in *Doe v. Alfred,* 906 F.Supp. 1092 (S.D.W.Va.1995), Congress enacted the Individuals with Disabilities Education Act to confer upon disabled students "an enforceable substantive right to public education." 906 F.Supp. at 1096. Furthermore, Congress conditioned federal financial assistance to individual States under the Act upon each State's compliance with the Act's "substantive and procedural goals." 906 F.Supp. at 1096. Specifically, as expressed in 20 U.S.C. 1400(c) [1991], the purpose of the Individuals with Disabilities Education Act is to assure children with disabilities:

> a free appropriate public education which emphasizes special education and related services designed to meet their unique needs, to assure that the rights of children with disabilities and their parents or guardians are protected, to assist States and localities to provide for the education of all children with disabilities, and to assess and assure the effectiveness of efforts to educate children with disabilities.

In *Alfred, supra,* the District Court acknowledged that the development of an "individualized education program" is the "center-

piece requirement" of the Individuals with Disabilities Education Act and functions as a guide for the provision of services, thereby reassuring that those services are related to "identifiable educational goals and objectives" for disabled students. 906 F.Supp. at 1094 n. 2. Consistent with that principle is 20 U.S.C. 1415(b) [1988] which provides that the parents or guardian of a disabled child may present complaints "relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." Furthermore, the parents or guardian may request "an impartial due process hearing" in relation to such matters. *See* n. 3, *supra.*

The Individuals with Disabilities Education Act provides that any party aggrieved by the decision at the due process hearing has the right, pursuant to 20 U.S.C. 1415(e)(2) [1988], to seek further redress. Moreover, as stated in 20 U.S.C. 1415(f) [1988]:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973, or other Federal statutes protecting the rights of handicapped children and youth, except that before the filing of a civil action under such laws *seeking relief that is also available under this subchapter,* the procedures under subsections (b)(2) . . . of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.[5]

(emphasis added).

The West Virginia counterpart of the Individuals with Disabilities Education Act is found in *W. Va.Code,* 18–20–1 [1990], *et seq.,* entitled "Education of Exceptional Children," and in the regulations of the West Virginia State Board of Education, i.e. policy no. 2419, 126 C.S.R. 16. Both the State statutory and regulatory provisions concern the development of an individualized education program for disabled children. Moreover, as reaffirmed in State regulation, 126–16–1.6, those provisions, as well as the provisions of the Indi-

---

5. In *Alfred, supra,* the district court stated: "Section 1415(f) leaves no doubt alternative theories of recovery may be pursued parallel to or exclu-

sive of the relief provided by the [Individuals with Disabilities Education Act.]" 906 F.Supp. at 1098.

viduals with Disabilities Education Act, serve to assure children with disabilities "a free appropriate public education which includes special education and related services to meet their unique educational needs."

### III.

### The Standard of Review

Pursuant to Rule 56 of the *West Virginia Rules of Civil Procedure,* summary judgment is warranted where the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See generally,* Lugar & Silverstein, *West Virginia Rules of Civil Procedure,* p. 426–42 (Michie 1960).

Our standards of review concerning summary judgments are well settled. As this Court stated in syllabus point 3 of *Aetna Casualty and Surety Co. v. Federal Insurance Co.,* 148 W.Va. 160, 133 S.E.2d 770 (1963): "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." *See also* syl. pt. 1, *Burdette v. Columbia Gas Transmission Corporation,* 198 W.Va. 356, 480 S.E.2d 565 (1996); syl. pt. 2, *Rose v. Oneida Coal Co.,* 195 W.Va. 726, 466 S.E.2d 794 (1995); *Payne v. Weston,* 195 W.Va. 502, 506, 466 S.E.2d 161, 165 (1995); syl. pt. 2, *Graham v. Graham,* 195 W.Va. 343, 465 S.E.2d 614 (1995). Moreover, we note that, upon appeal, the entry of a summary judgment is reviewed by this Court *de novo.* Syl. pt. 1, *Koffler v. City of Huntington,* 196 W.Va. 202, 469 S.E.2d 645 (1996); syl. pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994).

### IV.

### The Settlement Agreement

Considering, first, the written settlement agreement executed by the parties on April 29, 1994, the appellees contend that the appellants' circuit court action was precluded because the settlement agreement released the appellees from "any and all actions, claims, complaints, demands, charges, damages ... and any other legal or equitable relief" concerning Ronnie Lee S.'s attendance at Williamson Elementary School and at Lenore Elementary School. Thus, the appellees assert that summary judgment was proper. The appellants contend, on the other hand, that summary judgment should not have been granted upon the basis of the settlement agreement because the agreement did not address the use of the "love bug" with regard to Ronnie Lee S.

As stated above, the appellants instituted the "due process" proceeding before the West Virginia State Board of Education because of the alleged failure of the appellees to provide Ronnie Lee S. with "a free appropriate public education." The settlement agreement which arose from that proceeding made no mention of the "love bug" and made no reference to any of the appellants' claims in relation thereto. Rather, the settlement contained limiting language indicating that its import related solely to Ronnie Lee S.'s individualized education program. Specifically, the settlement agreement expressly concerned a release of contested matters with regard to (1) the location of Ronnie's program; (2) his classification; and (3) the development of Ronnie's goals and objectives. As the settlement agreement stated, it released the appellees from claims "in connection with the following issues that were part of or raised in due process case number 94–023: *location of program for Ronnie Lee [S.], the placement or classification of Ronnie Lee [S.], and/or the implementation or development of goals and objectives for Ronnie Lee [S.]* " (emphasis added).

Accordingly, upon a careful review of the record, and particularly in view of the above language of the written settlement agreement, this Court concludes that the circuit court committed error in determining that the settlement agreement precluded the appellants' action. The settlement agreement did not address the subject matter of the action. Manifestly, summary judgment should not have been granted upon the basis of the agreement.

## V.

### The Administrative Remedies

■ The circuit court also granted summary judgment because it determined that the appellants' action was precluded by the Individuals with Disabilities Education Act, i.e., the appellants should have exhausted their administrative remedies under the Act and litigated the use of the "love bug" in that regard, rather than by filing an action in circuit court. The appellees contend that the circuit court was correct in that determination.

On the other hand, the appellants contend that they, in fact, exhausted their administrative remedies, as evidenced by the written settlement agreement, and that, consequently they were entitled to file the action in circuit court. In the alternative, the appellants contend that, inasmuch as the circuit court action was essentially a damage claim involving allegations of the intentional or reckless violation of the appellants' rights, the action was unrelated to the purpose of the Individuals with Disabilities Education Act, and, consequently, any attempt to exhaust administrative remedies under the Act would have been futile. For the reasons stated below, this Court is of the opinion that the appellants' contentions, on both counts, have merit.

In *Alfred, supra*, the mother of a child with learning disabilities filed an action in the Circuit Court of Wood County, West Virginia, asserting that local school officials had deprived her son of his right to "a free appropriate public education" and had violated his right to privacy. The defendants, however, removed the action to the federal district court and filed a motion to dismiss upon the ground that the plaintiffs had failed to exhaust the administrative remedies provided by the Individuals with Disabilities Education Act. Indicating that the plaintiffs had never initiated any administrative proceedings under the Act, including a request for a due process hearing, the district court granted the motion to dismiss with regard to the free appropriate public education issue and denied the motion, without elaboration, with regard to the alleged violation of the right to privacy. As the court, in *Alfred*, reasoned:

"[T]he protection of a disabled child's right to a FAPE [free appropriate public education] was the essential mission of the drafters of the IDEA [Individuals with Disabilities Education Act].... Accordingly, since Plaintiffs' requested relief is also available to them under the IDEA, they are required to exhaust their administrative remedies under the IDEA [.]" 906 F.Supp. at 1099–1100.

Nevertheless, in so holding, the district court, in *Alfred,* observed:

> There are, of course, exceptions to the exhaustion requirement. Parents need not avail themselves of the administrative process when (1) such process would be inadequate or futile; (2) the grievance challenges generally applicable policies that are contrary to law; or (3) exhaustion will work severe harm upon the litigant.... [T]he determination of whether one of these 'narrow' exceptions is applicable depends upon ' "whether the pursuit of administrative remedies under the facts of a given case will further the general purposes of exhaustion and the congressional intent behind the administrative scheme." '

(citations omitted). 906 F.Supp. at 1097.

Significantly, unlike the circumstances in *Alfred,* the appellants herein utilized the administrative process provided by the Individuals with Disabilities Education Act prior to the institution of the circuit court action. In November 1993, the appellants filed a request with the West Virginia State Board of Education, pursuant to the Act, seeking a "due process hearing" for the alleged failure of the appellees to provide Ronnie Lee S. with a free appropriate public education. *See* 20 U.S.C. 1415(b)(2) [1988]; n. 3, *supra.* Thereafter, the parties voluntarily entered into a written settlement agreement.

Under the circumstances herein, the execution of that agreement constituted, in effect, an exhaustion of the appellants' administrative remedies under the Individuals with Disabilities Education Act. In *Lykes Bros. Steamship Co. v. General Dynamics Corporation,* 512 F.Supp. 1266 (D.Mass.1981), a case involving a "dispute resolution process" concerning certain government contracts, the district court noted: "Settlement of all dis-

puted issues between the parties qualifies as an event which renders exhaustion unnecessary." 512 F.Supp. at 1270 n. 3. Here, this Court concludes that it would not be appropriate to penalize the appellants for not pursuing further remedies under the Individuals with Disabilities Education Act where the administrative proceedings had become non-adversarial due to the written settlement agreement. Thus, although a settlement agreement was reached, the administrative process, unlike in *Alfred,* was not bypassed, and the remedies set forth in the Act were, for all practical purposes, exhausted. *See Hayes v. Unified School District No. 377,* 877 F.2d 809, 814 (10th Cir.1989) (stating that exhaustion requirements "should not be applied inflexibly.")

Moreover, the appellants are correct in their assertion that the circuit court action was essentially a damage claim involving allegations of the intentional or reckless violation of the appellants' rights, and that, as such, the action was unrelated to the purpose of the Individuals with Disabilities Education Act. The complaint filed in the action alleged that, as a result of the "love bug," Ronnie Lee S. sustained "great psychological and emotional stress, developmental delays, trauma, fears and pain and suffering." Specifically, the complaint alleged that, because of the use of that device, the appellees (1) violated Ronnie Lee S.'s rights to due process, to an education and to be free of excessive punishment; (2) committed assault and bat-tery; (3) intentionally or recklessly inflicted severe emotional distress; and (4) discriminated against Ronnie Lee S. because of his disability. The complaint did not make reference to the Individuals with Disabilities Education Act. Certainly, while it may be argued that the portion of the complaint concerning the alleged violation of Ronnie Lee S.'s right to an education was precluded by the Act, the gravamen of the action clearly falls beyond the general admonition that the Act serves to assure children with disabilities "a free appropriate public education which emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. 1400(c) [1991].[6] Nor did the action of the appellants relate to the identification, evaluation or educational placement of a disabled child as contemplated by 20 U.S.C. 1415(b) [1988] of the Individuals with Disabilities Education Act or to any provision of the Act's West Virginia counterpart. *See Anderson v. Thompson,* 658 F.2d 1205 (7th Cir.1981) (indicating that, generally, an award of monetary damages under the Individuals with Disabilities Education Act is not allowable.)

As the petition for appeal to this Court indicates, the Individuals with Disabilities Education Act was created to expand, rather than to restrict, the rights of disabled children. Such an intent is evident in the purpose of the Act set forth in 20 U.S.C. 1400(c) [1991]. In particular, any further attempt to

---

6. It should be noted that, according to the "pretrial information sheet" filed by the appellants below, the following issues were to be litigated as a part of the appellants' action:

(1) Whether the alleged conduct of abuse actually occurred

(2) Whether the alleged misconduct was intentional

(3) Whether the defendants' acts were extreme and outrageous intentionally or recklessly causing severe emotional distress

(4) Whether defendants intended to cause offensive contact with Ronnie Lee [S.] or putting him in an imminent apprehension of such contact

(5) Whether defendants' actions were unlawful and wilful to infer that such actions were in reckless and wanton disregard of Ronnie Lee [S.'s] rights

(6) Whether defendants purposely abused Ronnie Lee [S.] or were recklessly indifferent to the well-being of Ronnie Lee [S.]

(7) Whether school officials received notice of a pattern of abuse and demonstrated deliberate indifference or tacit authorization of the offensive acts

(8) Whether defendants used excessive force on Ronnie Lee [S.]

(9) Whether Ronnie Lee [S.] was provided with an adequate education

In that context, the appellees suggest before this Court that any evidence concerning Ronnie Lee [S.'s] disability or his educational program, while attending Williamson Elementary School or Lenore Elementary School, would be inadmissible at trial as irrelevant. That assertion, however, is not properly before this Court and should be considered by the circuit court upon the remand of this action. The appellees, for example, could offer limiting instructions or a motion in limine in that regard.

exhaust administrative remedies, as in the circumstances herein, would be futile, where the relief sought in the civil action is not generally available under the Act. Accordingly, this Court holds that a civil action filed in a West Virginia circuit court, seeking monetary damages and injunctive relief from a county board of education and its personnel for the frequent and injurious use of a device employed to strap an autistic child to a chair while attending school, and which action includes allegations that the device was used upon the child in an intentional or reckless manner, is not precluded by the federal Individuals with Disabilities Education Act, 20 U.S.C. 1400 [1991], *et seq.*, or the Act's West Virginia counterpart found in *W. Va.Code,* 18–20–1 [1990], *et seq.*, and in West Virginia State Board of Education policy no. 2419, 126 C.S.R. 16, nor is the action subject to the exhaustion of administrative remedies requirement thereof, the Individuals with Disabilities Education Act and its West Virginia counterpart having been enacted to assure children with disabilities "a free appropriate public education" and the Act and its State counterpart having been enacted to generally expand the rights of such children, rather than to restrict them.

The circuit court, therefore, committed error in granting summary judgment upon the basis that the appellants' action was precluded by the Individuals with Disabilities Education Act.

## VI.

### Conclusion

In summary, the circuit court erred in determining that the appellants' action was precluded by the Individuals with Disabilities Education Act and by the written settlement agreement executed by the appellants and the appellees on April 29, 1994. Furthermore, as indicated above, the record reveals the existence of genuine issues of material fact concerning the appellants' claims. *See* n. 2 and n. 6, *supra.* Consequently, summary judgment was not warranted. The final order of the Circuit Court of Kanawha County, entered on June 25, 1996, is, therefore, reversed, and this action is remanded to that court for further proceedings.

Reversed and remanded.

MAYNARD, J., dissents and would affirm the trial judge.