# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE
October 14, 2010 Session

## JACKIE SABASKI ET AL. V. WILSON COUNTY BOARD OF EDUCATION ET AL.

**Appeal from the Circuit Court for Wilson County**
**No. 2010-CV-10     John D. Wooten, Judge**

---

**No. M2010-00872-COA-R3-CV - Filed December 17, 2010**

---

Parents of disabled child sued county board of education and several employees for assault and battery, false imprisonment, and negligent failure to train employees. The trial court dismissed the complaint on the ground that the plaintiffs failed to exhaust their administrative remedies pursuant to the Individuals with Disabilities Education Act ("IDEA"). We conclude that the IDEA's exhaustion requirement does not apply to the plaintiffs' state law claims. We further conclude that the plaintiffs' complaint fails to state a valid claim for negligent failure to train because the IDEA provides the exclusive remedy for such claims, but their claims for assault and battery and false imprisonment are not precluded by the IDEA.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed in Part, Affirmed in Part**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Tim Hatton, Lebanon, Tennessee, for the appellants, Jackie Sabaski and Jeffrey Susan, individually and on behalf of Emily S., a minor.

Jack Paul Brewer and David Randall Mantooth, Nashville, Tennessee, for the appellees, Wilson County Board of Education, Selene Tinsley, Helen Daniels, Darian Brown and Travis Mayfield.

Michael Ray Jennings, Lebanon, Tennessee, for the appellee, Wilson County Board of Education.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

Jackie Sabaski and Jeffrey Susan are the parents of Emily S., a minor child who was enrolled as a student in the Wilson County school system. In January 2010, Emily's parents filed suit in Wilson County Circuit Court against the Wilson County Board of Education and four employees. The complaint alleges that the school system developed an Individualized Education Plan ("IEP") for Emily as required under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, that the plaintiffs were coerced into agreeing to the IEP despite concerns about its requirements, and that Emily was never placed in a fragile classroom as provided in the IEP but was placed in a classroom for students with behavioral problems. According to the complaint, the classroom in which Emily was placed permitted the use of physical force to make students comply with class expectations, and the "use of physical force is contraindicated for students with Emily's disability."

The complaint alleges that the following events occurred on January 9, 2009:

> [T]he [defendant] employees of the Defendant Wilson County Board of Education, attempted to subject Emily to physical force and restraint in an effort to compel her to conform to instructions. When Emily rebelled against the attempted physical force and restraint, she was arrested, handcuffed and taken to jail where she was charged with various crimes including assault.

Charges against Emily were resolved through the juvenile court system. At the time of the filing of the complaint, she was being homeschooled.

The complaint alleges three causes of action. First, the plaintiffs aver that school employees attempted to force Emily into a position known as a "take." When she rebelled against this use of force and restraint, Emily was arrested. The plaintiffs assert that "[t]he conduct of the Defendants placed Emily in fear of imminent bodily injury and constitutes both an assault and a battery upon her person." The second cause of action is for false imprisonment. This count is based upon the actions of school employees who allegedly restrained Emily in a "quiet room." During this time, the complaint alleges, "Emily's movements were restricted and she was deprived of her freedom and liberty." The third count of the complaint asserts that the Wilson County Board of Education has a "duty to train its employees in how to handle students with disabilities" and "negligently failed to train its employees in how to handle students with the type of disability that afflicts Emily [S.]"

The plaintiffs seek damages, including the cost of homeschooling Emily until she graduates from high school, as well as damages for the emotional distress and fear caused by the alleged assault and false imprisonment, the aggravation of her underlying disability by these incidents, and the loss of social development as a result of having to be homeschooled. They also request "any and all other relief to which [Emily] may appear to be entitled."

In response to the complaint, the defendants filed a motion to dismiss pursuant to Tenn. R. Civ. P. 12.02(1) for lack of subject matter jurisdiction. With this motion, the defendants submitted an affidavit of Jill Micco, Supervisor of Special Education for the Wilson County school system, who testified that the plaintiffs had not filed an administrative complaint with the State Department of Education regarding Emily's IEP, had not requested mediation regarding the IEP, and had not requested or participated in a due process hearing regarding the IEP. The trial court granted the defendants' motion and dismissed the plaintiffs' complaint without prejudice.

On appeal, the only issue is whether the trial court erred in dismissing the plaintiffs' complaint based on their failure to exhaust the administrative remedies.

STANDARD OF REVIEW

The defendants moved to dismiss pursuant to Tenn. R. Civ. P. 12.02(1) for lack of subject matter jurisdiction. Our Supreme Court has held that, "[s]ince a determination of whether subject matter jurisdiction exists is a question of law, our standard of review is de novo, without a presumption of correctness." *Northland Ins. Co. v. State*, 33 S.W.3d 727, 729 (Tenn. 2000).

ANALYSIS

The defendants assert that the trial court's dismissal was correct because "the essence of Plaintiffs' Complaint is found in their allegation that Defendants' actions violated the IDEA" and that the plaintiffs were required to exhaust their administrative remedies under the IDEA, 20 U.S.C. § 1415.

We begin with an examination of the IDEA, its history and scope. One of Congress's purposes in enacting the IDEA was "to ensure that all children with disabilities have available to them a free appropriate public education" ("FAPE"). 20 U.S.C. § 1400(d). The primary statutory mechanism for assuring that a disabled child receives a FAPE is the development of an IEP, which contains an individualized instruction plan for that child. 20 U.S.C. §§ 1401(14), 1414(d). Under the IDEA, states may receive federal funding if they

-3-

meet certain requirements, including the establishment of procedural safeguards designed to give a parent notice and the opportunity to be heard when the parent believes his or her child has been denied rights secured by the IDEA. 20 U.S.C. §§ 1412, 1415.[1] Only parties aggrieved by the decision made during the administrative process may bring a civil action under the IDEA. 20 U.S.C. § 1415(i)(2). A plaintiff must exhaust his or her administrative remedies before bringing suit under the IDEA in federal or state court. *See Crocker v. Tenn. Secondary Sch. Athletic Ass'n*, 873 F.2d 933, 936 (6th Cir. 1989).

In 1984, the United States Supreme Court decided the case of *Smith v. Robinson*, 468 U.S. 992, 994 (1984), a case in which the plaintiffs sued under the IDEA (then the Education of the Handicapped Act ("EHA")) as well as other legal theories, including § 504 of the Rehabilitation Act of 1973 and 42 U.S.C. § 1983. At issue before the Supreme Court was the plaintiffs' request for attorney fees, which were not allowed under the IDEA. *Id.* The Court found the IDEA to be a comprehensive scheme, perceived by Congress to be "the most effective vehicle for protecting the constitutional right of a handicapped child to a public education." *Id.* at 1013. Where the IDEA was available to a handicapped child asserting a right to a FAPE, the court concluded that the IDEA was "the exclusive avenue through which the child and his parents or guardian can pursue their claim." *Id.* As to § 504 of the Rehabilitation Act, the Court stated:

> [T]here is no doubt that the remedies, rights, and procedures Congress set out in the EHA are the ones it intended to apply to a handicapped child's claim to a free appropriate public education. We are satisfied that Congress did not intend a handicapped child to be able to circumvent the requirements or supplement the remedies of the EHA by resort to the general antidiscrimination provision of § 504.

*Id.* at 1019. The Court denied the plaintiffs' request for attorney fees. *Id.* at 1021.

In reaction to the Court's holding in *Smith v. Robinson*, Congress amended the IDEA to include the provisions now found at 20 U.S.C. § 1415(l):

> Nothing in the chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, title V of the Rehabilitation Act of 1973, *or other Federal laws protecting the rights of children with disabilities*, except that before the filing of a civil action under such laws *seeking relief that is also*

---

[1]Tennessee has enacted special education statutes similar to the IDEA. *See* Tenn. Code Ann. §§ 49-10-101–49-10-1306.

-4-

*available under this subchapter*, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

(Emphasis added). Section 1415(l) addresses the availability of relief under other federal statutory and constitutional provisions protecting children with disabilities. As the plaintiffs point out, § 1415(l) does not, by its terms, apply to claims arising under state law. *See Rogers v. Memphis City Schs.*, No. 02A01-9604-CV-00066, 1997 WL 675194, at *2, n.2 (Tenn. Ct. App. Oct. 29, 1997) (1986 amendment to IDEA "did not address pendent state law claims"). For that reason, we consider the defendants' reliance on the exhaustion requirement of 20 U.S.C. § 1415(l) in the present case to be misplaced. *See generally Franklin v. Frid*, 7 F. Supp. 2d 920, 927 (W.D. Mich. 1998) (case involving claims under 42 U.S.C. § 1983 and state law torts of assault and battery; court held that exhaustion of administrative remedies was required on § 1983 claims because the gravamen of the claim was deprivation of FAPE and declined to exercise supplemental jurisdiction over the state law claims);*Waterman v. Marquette-Alger Intermediate Sch. Dist.*, 739 F. Supp. 361, 370 (W.D. Mich. 1990) (case involving claims under IDEA and Michigan tort law; court remanded IDEA claims for exhaustion of administrative remedies and held in abeyance other proceedings pending the outcome of the administrative proceedings); *Meers v. Medley*, 168 S.W.3d 406, 410 n.1 (Ky. Ct. App. 2004) (expressing doubt that IDEA exhaustion of remedies requirement would apply to civil rights claims under state law).

While § 1415(l) superseded part of the Supreme Court's holding in *Smith v. Robinson*, subsequent caselaw has generally interpreted *Smith* as barring state law claims for denial of a child's right to a FAPE because "the IDEA provides the exclusive remedy for a child denied the right to a public special education." *Rogers*, 1997 WL 675194, at *3 (affirming dismissal of claim filed under the Tennessee Governmental Tort Liability Act for failure to provide special education services as required by federal law); *see also Town of Burlington v. Dep't of Educ.*, 736 F.2d 773, 788 (1ˢᵗ Cir. 1984) ("state law cannot provide a separate basis for relief via a pendent state claim"), *aff'd*, *Sch. Comm. of the Town of Burlington v. Dep't of Educ.*, 471 U.S. 359 (1985); *Barwacz v. Mich. Dep't of Educ.*, 674 F. Supp. 1296, 1308 (W.D. Mich. 1987) (suit brought under Michigan's Mandatory Special Education Act dismissed for failure to state a claim upon which relief could be granted).

In our case, then, the question becomes whether the state law claims asserted by the plaintiffs are essentially based upon the state's failure to provide a FAPE. In making this determination, we find the analysis applied by the court in *Sagan v. Sumner County Bd. of Educ.*, No. 3:09-cv-1003, 2010 WL 2696169 (M.D. Tenn. 2010), to be instructive. *Sagan* required the court to decide whether IDEA exhaustion of administrative remedies was required with respect to various claims brought pursuant to § 1983, the Americans with

Disabilities Act, and constitutional provisions. *Id.* at \*4-5. In that context, the court had to determine whether the civil rights claims asserted by the plaintiffs related directly to the student's access to a FAPE and were therefore subject to the IDEA's exhaustion requirement. *Id.* at \*7. We understand that the context of the present case differs from *Sagan* in that we must decide whether IDEA precludes the state law claims, whereas *Sagan* involved the IDEA's relationship to claims brought under other federal statutory and constitutional provisions. The applicable analysis, however, is similar.

With respect to claims alleging a failure to provide FAPE, the court in *Sagan* concluded that exhaustion of administrative remedies was required under the IDEA. *Id.* at \*8. With respect to other claims, however, the court reached a different conclusion:

> Plaintiffs' claims concern the alleged unlawful and unreasonable use of force, as well as the alleged negligence of the Board in failing to detect or prevent the abuse allegedly perpetrated by Weidenbenner [a teacher]. The Court construes these claims as arising from non-educational injuries, irrespective of the fact they they occurred in an educational setting and were allegedly perpetrated by educators against a student. If Jane Doe were *not* a disabled student, there would be no administrative barrier to her pursuit of these claims. . . . In short, this Court cannot construe the claims asserted in Counts I and II as seeking relief "that is also available" under the IDEA, as they are not directly related to the school's provision of a FAPE to her.

*Id.* at \*12. The court denied the motion to dismiss counts I and II for failure to exhaust administrative remedies. *Id.*

In *Sellers v. School Board of the City of Manassas*, 141 F.3d 524, 525 (4th Cir. 1998), the parents asserted claims under the IDEA, § 504 of the Rehabilitation Act, and Virginia law. The court affirmed the dismissal of the plaintiffs' IDEA claim on the basis that neither compensatory nor punitive damages were available under the IDEA. *Id.* at 526-28. In reaching this conclusion, the court compared the IDEA with actions for tort-like damages:

> The touchstone of a traditional tort-like remedy is redress for a broad range of harms "associated with personal injury, such as pain and suffering, emotional distress, harm to reputation, or other consequential damages." *United States*

*v. Burke*, 504 U.S. 229, 239, 112 S.Ct. 1867, 1873, 119 L.Ed.2d 34 (1992) (interpreting Title VII). By contrast, the touchstone of IDEA is the actual provision of a free appropriate public education.

. . . .

The purpose of these procedural mechanisms [required under the IDEA] is to preserve the right to a free appropriate public education, not to provide a forum for tort-like claims of educational malpractice.

*Id.* at 527. The IDEA has been described as "not well-suited to remedying past instances of physical injury" or to providing relief for retrospective injuries. *Covington v. Knox County Sch. Sys.*, 205 F.3d 912, 918 (6th Cir. 2000); *see also Lopez v. Metro. Gov't of Nashville & Davidson County*, 646 F. Supp. 2d 891, 907 (M.D. Tenn. 2009).

With respect to the plaintiffs' claims for assault and battery and false imprisonment, which are intentional torts, we do not consider the IDEA preclusive. The claims are not brought under laws designed to protect a disabled child's right to a FAPE, and they seek monetary damages to compensate the plaintiffs for past injuries to their child. The IDEA does not authorize monetary damages. *See Crocker*, 980 F.2d at 386. If Emily were not a disabled child entitled to services under the IDEA, her parents would not be precluded from bringing actions for these intentional torts.

In *Ronnie Lee S. v. Mingo County Board of Education*, 500 S.E.2d 292, 299 (W. Va. 1997), the plaintiffs' complaint included allegations that the defendants' use of a device known as the "love bug," a mechanism with which their child was strapped to a chair, constituted assault and battery and the intentional or reckless infliction of severe emotional distress. The complaint also alleged violations of the child's rights and discrimination because of his disability. *Id.* The appellate court held that the lower court erred in granting summary judgment on the basis that the plaintiffs' action was precluded by the IDEA. *Id.* at 300. While noting that the portion of the complaint concerning the child's right to an education was arguably precluded by the IDEA, the court concluded that "the gravamen of the action clearly falls beyond the general admonition that the [IDEA] serves to assure children with disabilities" a FAPE and that the action did not relate to the "identification, evaluation or educational placement of a disabled child" as contemplated by the IDEA or the West Virginia counterpart. *Id.* at 299; *see also O'Hayre v. Bd. of Educ. for Jefferson County Sch. Dist.*, 109 F. Supp. 2d 1284, 1295 (D. Colo. 2000) (denying motion to dismiss assault claim against principal, but dismissing IDEA claim); *Meers v. Medley*, 168 S.W.3d at 410 (allegations of physical and mental assault and/or abuse not within the scope of the IDEA).

We must conclude that the trial court erred in dismissing the plaintiffs' claims for assault and battery and false imprisonment.

By contrast, we conclude that the plaintiffs' claim against the board of education for failure to properly train its employees in handling children with disabilities like Emily's is precluded by the IDEA. In *Rogers v. Memphis City Schools*, 1997 WL 675194, at *1, the plaintiff "alleged that the Memphis City Schools failed to provide special education services as required by federal law, and that this failure constituted negligence under the [Tennessee Governmental Tort Liability Act]" ("TGTLA"). The plaintiff sought monetary damages for pain and suffering. *Id.* The trial court granted the defendants' motion to dismiss for lack of subject matter jurisdiction based upon the plaintiff's failure to exhaust administrative remedies as required under the IDEA. *Id.* After reviewing the caselaw, the court concluded that, pursuant to *Smith v. Robinson*, the plaintiff "is limited to the remedies provided in the IDEA and cannot supplement those remedies by resorting to a claim under the TGTLA for alleged violations of the IDEA." *Id.* at *4. Since "the IDEA is the exclusive remedy for a child with disabilities asserting the right to a free appropriate public education," the court held that the plaintiff had failed to state a claim under the TGTLA. *Id.; see also Sturm v. Bd. of Educ. of Kanawha County*, 672 S.E.2d 606, 613 (W. Va. 2008) (affirming the dismissal of state law negligence claims after concluding that all of the claims arose out of the defendants' failure to provide a FAPE).

The reasoning of *Rogers* leads to the same result with respect to the claim for failure to train in the present case. The plaintiffs' allegations regarding the school system's failure to provide adequate services relate directly to its obligations under the IDEA. The plaintiffs are essentially seeking to collect monetary damages for violations of the IDEA. Because the IDEA is the exclusive remedy for the failure to provide a FAPE, the plaintiffs' negligence count fails to state a claim upon which relief can be granted under the TGTLA. Although the trial court dismissed the complaint for lack of subject matter jurisdiction, this court can affirm the result reached by the trial court on different grounds. *Webb v. Tenn. Dep't of Tourist Dev.*, No. M2004-02763-COA-R3-CV, 2006 WL 2334852, at *6 n.10 (Tenn. Ct. App. Aug. 10, 2006); *Rogers*, 1997 WL 675194, at *4.

CONCLUSION

The judgment of the trial court is reversed with respect to counts I and II of the plaintiffs' complaint but affirmed with respect to count III. Costs of the appeal are taxed one-half against the plaintiffs and one-half against the defendants.

_____
ANDY D. BENNETT, JUDGE